THOMSON v. SHIRLEY.

(Circuit Court, D. Oregon. July 31, 1895.)

No. 2,112.

FORECLOSURE OF MORTGAGES—APPOINTMENT OF RECEIVERS—RENTS AND PROFITS.

Under a statute declaring that a mortgage of real property shall not be deemed a conveyance so as to enable the mortgagee to recover possession without foreclosure and sale (Gen. Laws Or. 1845–64, p. 228, § 323), the mortgagee has no right to take the rents, profits, and crops before he has secured possession by actual foreclosure and sale according to law; and it is not in the power of the parties, even by express stipulation, to give him such right. Therefore, a provision in a mortgage of farm lands that, in case foreclosure proceedings are instituted, a receiver may be appointed to take the rents, profits, and crops, and apply them on the debt, in no wise enlarges the mortgagee's rights. In a proper case, the court will appoint a receiver without any such stipulation; and, in any other case, it will not appoint one, whatever the parties may have agreed.

This was a bill by William Thomson, Jr., against James Q. Shirley to foreclose a mortgage on certain farming lands.

John H. Woodward, for plaintiff.

John J. Balleray and J. L. Rand, for defendant.

BELLINGER, District Judge. This is a suit to foreclose a mortgage upon farm lands. The mortgage provides that, in case foreclosure proceedings are instituted to collect the note which the mortgage secures, the court may appoint a receiver to take the rents, issues, profits, and crops, and apply them in payment of the mortgage. The defendant executed other mortgages, subsequent to that of complainant, and, in addition to these, has suffered several judgments to be taken against him. Upon the filing of the complaint herein, on March 26, 1894, a receiver was appointed under the provision of the mortgage therefor. The appointment was made ex parte, on complainant's application. On July 25th following the receiver was removed, on the ground that he was a party in interest in the suit, being the holder of the second mortgage. Prior to his removal, the receiver had entered into certain contracts of farming or leasing of said lands on shares. After his removal he continued to act as receiver, and disposed of the crops earned under the farming contracts, and on April 13, 1895, made his final report. This report shows a balance of profits from sales of farm products amounting to $1,017.93, which balance the master's report recommends should be applied, after paying for the services of the receiver, to the payment of the second mortgage. The first mortgage was wholly satisfied by the proceeds of the sale of the mortgaged premises.

The laws of Oregon provide that:

"A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale, according to law." Gen. Laws 1845–64, p. 228, § 323.

Under this statute the mortgagee is not entitled to the rents and profits before actual possession, even when the mortgagor covenants in the mortgage to surrender the mortgaged property on default in payment of the debt, and nevertheless refuses to deliver it after default. Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420. In the case just cited the court held that the complainant could not be aided by the stipulation, in the defeasance exacted by the mortgagee, that Goldsmith and Teal would, upon default in the payment of the note secured by the mortgage, deliver to the trustee the possession of the mortgaged premises; that such contract was contrary to the public policy of the state of Oregon, as expressed in the statute cited, and was not binding on the mortgagor or his vendee, and could not be enforced. The court classes such contracts with those where common carriers have sought to relieve themselves from liability resulting from their own negligence by contract, and with fraudulent and other contracts forbidden by public policy. The stipulation in the mortgage in this suit for the appointment of a receiver, in case of foreclosure, to take the rents, issues, profits, and crops, and apply them in the payment of the mortgage, is intended to enable the mortgagee, in case of default by the mortgagor, to oust the mortgagor's possession in advance of a sale on foreclosure. The covenant in Teal v. Walker to surrender the mortgaged property on default is not different in legal effect from that in this case, that, in case of default, a receiver may be appointed to take the rents, issues, profits, and

crops, and apply them on the mortgage. If the mortgagee is not entitled to the rents and profits in the one case, he is not entitled to them in the other. The mortgagee cannot by means of a receiver defeat the obvious purpose of this statute, and get possession by a short cut; and this is what he does, in effect, when he seizes the rents and crops in such case and applies them in advance of a foreclosure sale. The stipulation in the mortgage that upon the mortgagor's default a receiver may be appointed to take the crops, in no wise enlarges the rights of the mortgagee. In a proper case a receiver will be appointed without such a stipulation. In no other case should one be appointed, no matter what the parties may agree beforehand.

In Hazeltine v. Granger, 44 Mich. 503, 7 N. W. 74, it is held that any provision in a mortgage of lands which allows an ex parte order for a receiver of rents and profits, or destroys in advance the equity of redemption, is contrary to equity, and will not be enforced by a court of chancery. The court says that the old practice under which a receiver was appointed (1) where the security was inadequate, and (2) where the mortgagor was insolvent, is changed by the statute which secures the mortgagor in his possession until a foreclosure has become absolute. The reason for the statute, and the result that would follow from the enforcement of such stipulations in mortgages as that under consideration, are thus stated by the court:

"Every mortgage made in common-law form contains words whereby, if applied as they read, possession would belong to the mortgagee, and his title would become absolute by default. The whole aim of equity was to arrest this forfeiture, and not allow the language of a mortgage to have any force against the equity of redemption. The statute is a further step in the same direction, for the protection of mortgagors against agreements which, as literally drawn, and as therefore expounded, were deemed dangerous and against public policy. The language of this mortgage expressly granting rents and profits on default is no stronger than the previous words of grant, and is really narrowed. It was no doubt intended to go further, and to evade the statute. If it had contained an agreement that ejectment should lie, it could not very well be enforced against the clause of the statute prohibiting it. It can have no greater force in enlarging the jurisdiction of equity to appoint receivers, which we held in Wagar v. Stone had been abolished. Any such an attempt to create a forfeiture is contrary to equity and equity will not enforce it. The same principle which makes all original agreements void which destroy the equity of redemption in advance must cover a partial as well as complete destruction. In Batty v. Snook, 5 Mich. 231, it was held that, where an agreement was in fact a mortgage, an executory agreement to give up the equity of redemption on default was void, and would violate the doctrine which had annulled the common-law forfeiture. If mortgagees can evade the law by requiring a forfeiture of something a little less than the entire freehold, but nevertheless covering its usufruct, the beneficial effect of the modern legislation, and, to a considerable extent, of the previous equitable doctrine, will be wiped out."

The case of Wagar v. Stone, 36 Mich. 364, referred to in the above quotation, holds that, the mortgagor being entitled under the statute to the possession, and consequently to the rents and profits, of the mortgaged premises, until such time as his title is divested by a perfected foreclosure, it is not competent to cut short his rights in this regard by means of a receiver appointed in the foreclosure suit.

The only exception to the well-established rule which excludes the mortgagee from possession of rents and profits by a receiver is in

that class of cases where the value of the property mortgaged is threatened with loss or destruction. Where the value of the property mortgaged depends upon its operation,—upon its character as a going concern,—it may become necessary, in a proper case, to appoint a receiver to operate the property and thus preserve it. Such are the cases of railroads, which are liable for want of proper management to fall into disrepair, or to suffer a diversion of their traffic, or to become disintegrated, where such a road forms a system made up of different lines, or of a main and branch lines. These considerations do not apply to ordinary real-estate mortgages, and least of all to mortgages of farm lands. The practice is frequently resorted to of seizing such lands by means of a receiver, as was done in this case, just before harvest, in order that the mortgagee, through the agency of a receiver, may reap where the mortgagor has sown. I have in one or more cases appointed receivers in such cases, who have thus harvested the mortgagor's crop and applied it to the mortgagee's debt. But so far this has been done without objection on the part of the parties in interest, and without consideration by the court. My attention has now, for the first time, been called to the unlawfulness of this practice, and to its violation of the right of possession in the mortgagor until a foreclosure has become absolute. In this case it turned out that the receiver is a second mortgagee, and a party in the foreclosure suit, who was removed because of such interest. After his removal he proceeded to harvest and market the crops grown on the mortgaged premises. For the service so rendered he asks to be compensated out of the residue in his hands, and that the balance of such residue be applied upon his debt. The money on hand will not be so applied. It represents the earnings of the property during the time the mortgagor was entitled to the possession, and equitably belongs to him. And the order of the court will direct its payment to him or his assignee.