RUSSO v WOLBERS

Docket No. 55139. Submitted March 4, 1982, at Grand Rapids.—
Decided May 19, 1982.

Robert E. Wolbers and M. Elisabeth Wolbers appeal from a
decision of the Manistee Circuit Court, Charles A. Wickens, J.,
in which their vendee's interest in a land contract with Wanda
F. Russo was foreclosed and their statutory right of redemption
held to have been validly contracted away. *Held:*

1. The record indicates that the trial court, in order to be
satisfied that the agreement was freely and fairly made, that
no undue advantage was taken of the appellants, and that the
agreement was based on good and valuable consideration,
closely scrutinized the agreement by which appellants were
held to have contracted away their right of redemption. The
decision of the trial court supports a finding of a valid waiver of
the statutory redemption right.

2. Any error which may have occurred by the trial court's
denying the Wolbers' motions to set aside a judgment on the
ground that the judgment had not been properly entered
pursuant to the court rules was clearly harmless.

3. The trial court did not err by denying the Wolbers' claim
that Wanda Russo waived her interest in the security underly-
ing a promissory note on personal property included with the
land contract purchase by obtaining a writ of execution. The
writ of execution was actually a mislabeled notice of judicial
sale and no sale ever occurred, nor did plaintiff act inconsis-
tently with her property lien.

Affirmed.

1. Words and Phrases — "Right of Redemption".

The term "right of redemption" is a legal term of art used to

References for Points in Headnotes

[1] 47 Am Jur 2d, Judicial Sales §§ 333, 334.
  55 Am Jur 2d, Mortgages § 510.
[2, 4-6, 8, 9] 55 Am Jur 2d, Mortgages §§ 86, 87, 514, 515, 1222, 1246.
[3-6] 55 Am Jur 2d, Mortgages § 511.
[7] 55 Am Jur 2d, Mortgages § 515.
[9] 55 Am Jur 2d, Mortgages § 1229.

define the right granted by statute to redeem property after it has been sold by judicial sale.

2. MORTGAGES — LAND CONTRACTS — EQUITY OF REDEMPTION.

Michigan adheres to the doctrine against clogging a mortgagor's equity of redemption; a mortgagor may release his equity of redemption to the mortgagee for a good and valuable consideration when done voluntarily and there is no fraud and no undue influence brought to bear upon the mortgagor for that purpose by the mortgagee, but it cannot be done by a contemporaneous or subsequent executory contract by which the equity of redemption is to be forfeited if the mortgage debt is not paid on the day stated in such contract.

3. MORTGAGES — RIGHT OF REDEMPTION — WAIVER.

The courts have consistently given careful scrutiny to any transaction in which a mortgagor waives any alleged equitable or statutory right of redemption.

4. MORTGAGES — LAND CONTRACTS — EQUITY OF REDEMPTION.

The doctrine against clogging the equity of redemption is part of the common law of specific performance and is an inherent and essential characteristic of every mortgage and land contract.

5. MORTGAGES — EQUITY OF REDEMPTION.

A mortgagor, in the absence of a statutory provision to the contrary, may sell and convey his equity of redemption to a mortgagee by a separate and distinct contract entered into in good faith and for good consideration.

6. MORTGAGES — EQUITY OF REDEMPTION.

Any contract by which a mortgagor sells or conveys his equity of redemption to the mortgagee is viewed suspiciously and is carefully scrutinized by an equity court; the exchange must be fair, frank, honest, and without fraud, misconduct, undue influence, oppression or unconscionable advantage of the poverty, distress or fears of the mortgagor.

7. MORTGAGES — RIGHT OF REDEMPTION — WAIVER.

A mortgagor's right of redemption can be defeated only by a subsequent agreement upon new consideration; the mortgagee may not contract with the mortgagor at the time of the loan for waiver of redemption rights.

8. MORTGAGES — PLEDGES — EQUITY OF REDEMPTION.

The doctrine against clogging the equity of redemption and its exception for a subsequent agreement for new consideration

applies both to mortgages of real property and pledges of personal property.

9. MORTGAGES — PLEDGES — EQUITY OF REDEMPTION — WAIVER.

An agreement by which a mortgagor or pledgor sells or conveys his interest to the mortgagee or pledgee is valid if the mortgagee or pledgee can sustain the burden of showing that the bargain is free of fraud and oppression.

*Krolczyk & Danielson,* for plaintiff.

*Schnelle & Wilson, P.C.,* for defendants.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

CYNAR, J. Defendants appeal by right the foreclosure of their vendee's interest in a land contract.

On July 17, 1974, plaintiff and her husband, Joseph A. Russo (now deceased), as vendors, entered into a land contract with defendants as vendees. The land contract covered a tavern in the City of Manistee. The parties also exchanged personal property contained in the bar for a promissory note for the value of the property. The security agreement underlying the promissory note and the land contract were cross-collateralized. Defendants made a down payment of $7,000 on the $30,000 purchase price of the real estate and one of $7,000 on the $25,000 purchase price of the personal property.

On July 10, 1979, plaintiff commenced foreclosure proceedings on the land contract. She alleged that she had paid the 1975 tax bill ($1,484.93) and demanded reimbursement. Defendants were obligated to pay taxes under the contract. Additionally, the 1976, 1977 and 1978 property taxes were

---

* Circuit judge, sitting on the Court of Appeals by assignment.

overdue. Plaintiff also claimed waste and inadequate insurance. Defendants defaulted.

An hour before the scheduled hearing to enter judgment of foreclosure, plaintiff and her attorney met with defendants and their attorney. They orally agreed to drop the foreclosure proceedings in return for the defendants' taking care of the defaults existing under the contract. This agreement was reduced to writing by plaintiff's attorney. Defendants then signed the agreement. Plaintiff refused, however, to sign, until several paragraphs were added. Plaintiff's attorney prepared another writing which was satisfactory to plaintiff but not to defendants.

On January 8, 1980, plaintiff noticed the foreclosure for hearing. The hearing was adjourned so defendants could obtain new counsel. On January 24, 1980, a hearing was held at which plaintiff alleged that the parties had not entered into an agreement to forestall foreclosure proceedings. She asked the court to allow her to proceed with the foreclosure. Defendants alleged that a valid agreement had been made and the judge agreed. The judge held that an oral agreement had been reached which did not have contractual force because of the statute of frauds. Nonetheless, plaintiff was estopped from disavowing the agreement by the payment of certain sums by defendants pursuant to the agreement. He also stated that "equity abhors a forfeiture and does everything possible to avoid one".

By a court order dated January 24, 1980, the said stipulation and agreement was determined to be valid and binding on the parties and, if the conditions therein were followed, no default of the land contract would enter. The stipulation and agreement acknowledged reimbursement on the

1975 taxes and provided a schedule for the defendants to cause the 1976, 1977, 1978 and 1979 tax payments to become current. Further, the 1980 and subsequent taxes were to be paid within one year of the due date, all land contract payments as set forth were to be paid promptly and both parties were to follow the terms of the land contract. Defendants agreed to owe plaintiff $667.87 on a July 18, 1974, promissory note and $400 for attorney fees to prosecute the foreclosure action, both sums to be added to the land contract balance. Paragraph 6 provided as follows:

"6. If any of the terms or conditions as indicated above or which are part of the Land Contract which are not met wholly and completely and during those time periods as set forth, Defendants herein agree to waive their right of redemption and allow the Plaintiff to proceed for the Court requesting an immediate Order allowing the sale of the property here in question."

On August 14, 1980, a hearing was held for defendants to show cause why a judgment of foreclosure should not be entered. No payments had been made on the land contract for the last three months, resulting in a breach of the agreement which the parties had entered into at the time of the previous default. Defendants asked the court to allow them to cure their default by paying all arrearages within a short period of time. The court held that plaintiff was entitled to foreclosure due to the breach of the agreement entered into subsequent to the default. A judgment of foreclosure was entered on August 27, 1980. The trial judge set October 28, 1980, as the date for judicial sale and provided that defendants could redeem the property by paying the full amount due before that date. He explicitly stated that in accordance

with the prior agreement and stipulation, no right of redemption accrued to defendants.

On September 18, 1980, defendants were ordered to appear in court and show cause why prospective purchasers should not be permitted to enter onto the premises involved in the foreclosure. On the same day, the court heard a motion by defendants requesting that the August 27, 1980, judgment be set aside. Defendants argued that the judgment had been improperly entered and was therefore invalid, that since no verification of the amount due had been made before judgment was entered, the amount might be inaccurate, and that the provision eliminating the statutory redemption period after judicial sale was unenforceable and illegal. The trial judge rejected the arguments. He held that failure to comply with the rules concerning entry of judgment had not prejudiced defendants since the court was willing to make modifications upon a showing of good cause. He instructed the parties' attorneys to consult with plaintiff's collection agent to determine if agreement could be reached on the amount owed. He found that defendants had contracted away their post-judicial sale redemption rights by making the agreement and stipulation which followed the original default.

A hearing was held on October 21, 1980, on defendants' claim that, by instituting proceedings to obtain a writ of execution against defendants, plaintiff had waived her rights in the collateral, both real and personal. The judge entered an order rejecting this claim.

In plaintiff's appellate brief, she states that on December 12, 1980, before a judicial sale of the real property took place, the United States bankruptcy court confirmed defendants' Chapter 13

plan and stayed further proceedings in the foreclosure action. Defendants remain in possession of the bar and are making land contract payments to plaintiff in compliance with the Chapter 13 plan. Plaintiff claims that any arguments or complaints by defendants are therefore moot and asks that the lower court's decision be affirmed. Since plaintiff does not support her mootness claim with argument or authority (its only mention is in the conclusion of plaintiff's brief), it is not considered.

The primary question submitted for our consideration is whether the trial court erred by holding that defendants' waiver of their post-judicial redemption rights are valid.

Defendants' contention that the waiver language is unclear is not persuasive. The term "right of redemption" is a legal term of art used to define the right granted by statute to redeem after judicial sale. *Banking Corp of Montana v Hein,* 52 Mont 238; 156 P 1085 (1916), *Hummel v Citizens' Building & Loan Ass'n,* 38 Ariz 54, 57-58; 296 P 1014 (1931). Defendants' argument that the language of the agreement might be interpreted to preclude redemption before the judicial sale or to preclude redemption before judgment of foreclosure rather than eliminating the right of redemption after the judicial sale is strained under the record herein. The judge's interpretation that "right of redemption" referred to post-judicial sale right of redemption was correct.

The trial judge rejected defendants' claim that the alleged waiver of redemption rights was invalid. This issue was raised by defendants in their motion to set aside the judgment of foreclosure. The judge held that redemption rights could be contracted away and found that allowing defendants to escape their contract would do injustice to plaintiff.

The right of redemption after judicial sale is granted in MCL 600.3140; MSA 27A.3140, which states in part:

"The vendee of a land contract, his heirs, executors, administrators, or any person lawfully claiming from or under him or them may redeem the entire premises sold within 6 months from the time of the sale by paying to the purchaser, his executors, administrators, or assigns or to the register of deeds in whose office the deed of sale is deposited as provided in the court rules, for the benefit of the purchaser, the sum which was bid with interest from the time of the sale at the rate percent borne by the land contract."

A statutory right of redemption after judicial sale was granted with respect to land contracts for the first time in this section of the Revised Judicature Act, 1961 PA 236. A statutory right of redemption has been granted with respect to mortgaged property since 1899. See 1915 CL 12677. Decisions concerning waiver of redemption rights in land contract contexts are few in number. This being so, we find cases concerning redemption rights of mortgagors helpful since the statute treats redemption rights in both mortgage and land contract contexts alike and the practice on foreclosure of mortgages and land contracts is closely analogous. *Barnard v Huff,* 252 Mich 258, 262; 233 NW 213; 77 ALR 259 (1930).

Defendants rely on the Supreme Court's decision in *Birznieks v Cooper,* 405 Mich 319; 275 NW2d 221 (1979). In that case, the Court had to decide whether a party had redeemed property by a timely payment where the party mailed out-of-state personal checks as payment. Previous payments on the land contract in this form had been refused. The Court held that the question of proper tender of payment to redeem was one

resolved by interpretation of the statute and not by interpretation of the contract between the parties.

"A judgment for possession is, under the statute, subject to the redemption rights of the vendee or tenant. No agreement between the parties can deprive a vendee or tenant of his right to cure the default. The parties are beyond the contract. The vendee or tenant now exercises a statutory right, a right which can be diminished neither by the express nor the implied terms of the contract." *Id.,* 329-330.

The vendor had claimed that proper tender for redemption was governed by the contract of the parties, rather than the terms of the statute. The vendor claimed that out-of-state personal checks had never been acceptable as payments on the land contract, as shown by the parties' course of dealing. With due deference to *Birznieks, supra,* there is a question as to whether its broad language clearly applies to the case before us.

Defendants argue, first, that the statute precludes any waiver and, second, that such a waiver is against public policy and, therefore, void. Nothing in the Legislature's language precludes any waiver nor indicates waiver is against public policy.

The provisions concerning redemption rights of both mortgagors and land contract vendees appear in the same section of the Revised Judicature Act. The statutory redemption right is substantially identical for both mortgagors and land contract vendees. Land contract vendees were first given a statutory redemption right in the Revised Judicature Act, 1961 PA 236. Prior to enactment of the Revised Judicature Act, only mortgagors enjoyed a statutory right of redemption after judicial sale;

land contract vendees, however, were often granted similar rights at the discretion of the equity courts. *Young v Zavitz*, 365 Mich 354; 112 NW2d 493 (1961). The statutory grant of redemption rights to mortgagors was first granted in 1899 (1899 PA 200). See 1915 CL 12677. The present form of the statute has not significantly changed since 1899, other than amendment of the length of the redemption period and addition of identical provisions concerning land contracts. It is reasonable to assume that any judicial decisions interpreting the 1899 act can be applied to both mortgages and land contracts under MCL 600.3140; MSA 27A.3140.

With respect to the equity of redemption (prejudicial sale, as opposed to the right of redemption), Michigan adheres to the doctrine against clogging the equity of redemption.[1] In *Batty v Snook*, 5 Mich 231, 239-240 (1858), the Court stated:

"Equity is jealous of all contracts between mortgagor and mortgagee, by which the equity of redemption is to be shortened or cut off. The mortgagor may release the equity of redemption to the mortgagee for a good and valuable consideration, when done voluntarily, and there is no fraud, and no undue influence brought to bear upon him for that purpose by the creditor. But it can not be done by a contemporaneous or subsequent executory contract, by which the equity of redemption is to be forfeited if the mortgage debt is not paid on the day stated in such contract, without an abandonment by the court of those equitable principles it has ever acted on in relieving against penalties and forfeitures."

---

[1] "The doctrine against clogging the equity of redemption of a mortgage estate is an old doctrine brought forward in this country to prevent taking an inequitable advantage of distraught borrowers." *MacArthur v North Palm Beach Utilities, Inc*, 202 So 2d 181, 185 (Fla, 1967).

The courts have consistently given careful scrutiny to any transaction in which the mortgagor waives any alleged equitable or statutory right of redemption. *Nusbaum v Shapero,* 249 Mich 252; 228 NW 785 (1930), *Hazeltine v Granger,* 44 Mich 503; 7 NW 74 (1880).

Subsequent to the enactment of the statutory right of redemption for mortgagors in 1899, the Supreme Court affirmed the continuing validity of the clogging doctrine in *Gillam v Michigan Mortgage-Investment Corp,* 224 Mich 405; 194 NW 981 (1923). In examining the agreement to waive redemption rights, the Court stated:

"Our examination of the record does not convince us that this contract was unconscionable. The plaintiff was trying to handle a large business proposition without any financial means. Admittedly and naturally, he had reached a point where he could no longer carry it. He had at this time only an equity of redemption which was of no value to him unless he could effect a sale before it expired. There was small probability that he would be able to do this unless he could secure a cancellation of pressing debts, which at that time were upwards of $25,000, and could induce someone to carry the lease and option while he was negotiating the sale. It was the part of wisdom for him to make such an arrangement with the defendant. It was his only chance. He took it willingly and without persuasion. He was a man of intelligence, of extensive business experience, and thoroughly understood the legal effect of the transaction. Of course, it was born of his necessities, but we have discovered no evidence which would justify a finding that the defendant took advantage of his situation to drive him into an unfair bargain. In fact, under the circumstances, as shown by the record, we cannot say that the contract was not reasonably fair for the plaintiff; at least it was not unconscionable; it was fairly made without fraud or duress; it is supported by a reasonably adequate consideration and is legally sufficient to release the plaintiff's equity of redemption." *Id.,* 409-410.

The doctrine against clogging the equity of redemption is part of the common law of specific performance. It is an inherent and essential characteristic of every mortgage and land contract. *Barr v Granahan,* 255 Wis 192; 38 NW2d 705; 10 ALR2d 227 (1949). It is also well established, in the absence of a contrary statutory provision, that a mortgagor may sell and convey his equity of redemption to a mortgagee by a separate and distinct contract entered into in good faith and for good consideration. *Barr, supra.* As indicated, any contract by which the mortgagor sells or conveys his interest to the mortgagee is viewed suspiciously and is carefully scrutinized by an equity court. The exchange must be fair, frank, honest, and without fraud, misconduct, undue influence, oppression or unconscionable advantage of the poverty, distress or fears of the mortgagor. *Barr, supra.*

In other jurisdictions, courts have taken positions similar to Michigan's with regard to clogging. A mortgagor's right of redemption can be defeated only by a subsequent agreement upon new consideration. A mortgagee may not contract with the mortgagor at the time of the loan for waiver of redemption rights. *MacArthur v North Palm Beach Utilities, Inc,* 187 So 2d 681 (Fla App, 1966), *rev'd on other grounds* 202 So 2d 181 (Fla, 1967).

The "clogging doctrine" and its exception for a subsequent agreement for new consideration is described at length in *Humble Oil & Refining Co v Doerr,* 123 NJ Super 530, 549-550; 303 A2d 898 (1973). Concerning the exception from the general rule prohibiting clogging, the court stated:

"Moreover, it is also the law that although a mortgagor can at a later date, after the original mortgage transaction, surrender his equity of redemption to the

mortgagee and enter into an option or agreement to sell, it must be a fair bargain for an independent and adequate consideration. From the earliest days courts of equity have carefully scrutinized such arrangements. This rule is universally applied, in New Jersey and elsewhere, and it applies both to mortgages of real property and pledges of personal property. Normally the burden is imposed upon the mortgagee to prove fairness. The general rule is stated in 55 Am Jur 2d, Mortgages, § 1220, p 1001:

" 'However any contract by which the mortgagor sells or conveys his interest to the mortgagee is viewed suspiciously and is carefully scrutinized in a court of equity. The sale and conveyance of the equity of redemption to the mortgagee must be fair, frank, honest, and without fraud, undue influence, oppression, or unconscionable advantage of the mortgagor's poverty, distress, or fears of the position of the mortgagee.'

"The black letter rule of Restatement, Security, § 55(2), p 152 is that such agreement is 'valid if the pledgee sustains the burden of showing that the bargain is free from fraud and oppression,' and the comment thereto (p 153) acknowledges as the reason for the rule that '[s]ubsequent to the creation of a pledge the pledgee's ability to inflict an oppressive bargain upon the pledgor is greatly diminished although not wholly absent.' " (Citations omitted.)

See also *Coursey v Fairchild,* 436 P2d 35, 38 (Okla, 1967).

In some states, an apparently valid waiver of redemption rights can be made at any time. *Cook v McFarland,* 78 Iowa 528; 43 NW 519 (1889), *King v King,* 215 Ill 100; 74 NE 89 (1905). However in other states, courts have held that no valid waiver of statutory rights of redemption can be made. *Elson Development Co v Arizona Savings & Loan Ass'n,* 99 Ariz 217; 407 P2d 930 (1965), and *Mace v Norwood,* 155 Kan 302; 124 P2d 497 (1942). The courts in *Mace* and *Elson* held that no waiver could be made because a waiver would violate the

spirit of the redemption law and the intent of the Legislature in enacting it.

At a point in time about one hour before the scheduled hearing to enter a judgment of foreclosure, the parties in the instant case orally agreed to drop the foreclosure proceedings provided defendants took care of the defaults. At the stated time, plaintiff was asking to be reimbursed for $1,484.93 which she had paid on the 1975 overdue taxes. The 1976, 1977 and 1978 property taxes were overdue. Additionally, plaintiff was alleging other defaults. The plaintiff would not sign the agreement as reduced to writing and requested the court to allow her to proceed with the foreclosure. The defendants contended that a valid agreement had been reached and the trial court agreed. A judgment was entered accordingly. About eight months later, plaintiff moved for a show cause hearing as to why a judgment of foreclosure should not enter based on defendants' defaulting on three monthly land contract payments.

Defendants objected to the judgment of August 27, 1980, because it did not provide for a right of redemption. The court agreed the defendants had a right by statute to a period of redemption, unless this statutory right was contracted away by the parties. The trial court found a binding contract. There was consideration furnished by both parties to the agreement and defendants benefited from the agreement. Although the court might have articulated its decision more specifically, the record indicates that the court did closely scrutinize the agreement in order to be satisfied that it was freely and fairly made, that no undue advantage was taken of the defendants, and that it was for a good and valuable consideration. The decision of the trial court supports a finding of a valid waiver of the statutory redemption right.

Defendants argue that the trial judge erred by denying the defendants' motions to set aside a judgment which had not been properly entered pursuant to the court rules. The trial judge considered the objection and ordered the attorneys for both sides to confer on the amount of judgment. He again ruled on defendants' claim of statutory redemption rights. Both parties later stipulated to the amount of judgment and the trial judge considered defendants' claim of redemption rights before any attempt at judicial sale was made. If any error occurred, it was clearly harmless. GCR 1963, 529.1.

The trial judge did not err by denying defendants' claim that plaintiff waived her interest in the security by obtaining a writ of execution. This was clearly a foreclosure action, not an execution. No sale ever occurred, nor did plaintiff act inconsistently with her property lien. Mislabeling a notice of judicial sale is not determinative.

Affirmed.