OAKLAND HILLS DEVELOPMENT CORPORATION v LUEDERS
DRAINAGE DISTRICT

Docket No. 167306. Submitted May 9, 1995, at Detroit. Decided July
21, 1995, at 9:15 A.M.

Oakland Hills Development Corporation brought an action in the
Oakland Circuit Court against the Lueders Drainage District
and the City of Rochester Hills, seeking just compensation for
the portion of an eighty-three-acre parcel that was taken by the
drainage district that was being used for drain purposes and
rescission of the conveyance by the drainage district of the
remaining portion of the parcel to the city. The parcel, made
up of forty-four acres of wetlands and thirty-nine acres of
uplands, had been purchased by WX22, a corporation that is
the plaintiff's predecessor in interest. WX22 entered into two
options to purchase with Bernard Glieberman, one for fifty-two
acres that included all the uplands and one for the remaining
thirty-one acres of wetlands. To secure the repayment of Glie-
berman's down payment in the event that he chose not to
exercise the options, WX22 executed a note and a mortgage
covering the entire eighty-three-acre parcel in favor of Green-
pointe Condominiums. The drainage district determined that
most of the wetlands were needed for a drain improvement
project, entered into negotiations with WX22 to purchase the
needed wetlands, and ultimately made an offer to purchase of
the needed lands. When Glieberman decided not to exercise his
options to purchase, WX22 and the drainage district entered
into a purchase agreement that required the drainage district
to pay off the Greenpointe mortgage if WX22 defaulted and
further provided that, in such event, WX22 would have six
months to repay the district for the amounts expended to
discharge the Greenpointe mortgage less the purchase price of
the wetlands that were to be acquired for the drainage district.
Thereafter, WX22 defaulted on the Greenpointe mortgage, the
drainage district paid off that mortgage, and WX22 executed a

REFERENCES

Am Jur 2d, Eminent Domain §§ 44, 387.
See ALR Index under Drains and Drainage; Eminent Domain;
Negotiations.

mortgage of the whole parcel in favor of the drainage district to secure its payment of the amounts owed to the district as a result of the district's discharging of the Greenpointe mortgage. The mortgage agreement with the drainage district provided that upon default by WX22, the deed to the entire parcel, which had been placed in escrow, would be released to the district without the need of resorting to foreclosure and without any redemption period. When WX22 defaulted, the district took title to the entire parcel and then sold the upland portion of the parcel to the City of Rochester Hills. Following a bench trial, the court, Gene Schnelz, J., granted a directed verdict for the defendants. The plaintiff appealed.

The Court of Appeals *held:*

1. A drainage board in its negotiations to secure property for drain purposes must comply with the provisions concerning precondemnation negotiations of § 5(1) of the Uniform Condemnation Procedures Act (UCPA), MCL 213.55(1); MSA 8.265(5)(1), despite the suggestion in § 470 of the Drain Code, MCL 280.470; MSA 11.1470, that it is not until negotiations are unsuccessful that the condemnation procedures of the UCPA must be followed.

2. Section 5 of the UCPA requires that a condemning authority, before initiating negotiations for the purchase of property, must establish what it believes to be just compensation, must make a good-faith offer that is not less than the authority's appraisal, and must provide the landowner with the opportunity to review the appraisal. Although the drainage district failed to establish a just compensation for the parcel it sought before entering into negotiations and arguably did not make a good-faith offer because it had ordered an appraisal and made an offer for less than the appraisal amount, the purchase price negotiated by the parties was just compensation under the circumstances, because it left WX22 in as good a condition as it would have been under Glieberman's options to purchase.

3. The record fails to support the assertion that the negotiated purchase price was the result of coercion by the drainage district.

4. Because the price paid by the drainage district constituted just compensation, the plaintiff is not entitled to attorney fees pursuant to § 16(3) of the UCPA, MCL 213.66(3); MSA 8.265(16)(3).

5. Although a mortgagor may release the equity of redemption to a mortgagee, it must be done in a contract that is separate and distinct from the mortgage agreement and that is executed after default and it must be supported by good and

valuable consideration. Because no separate consideration was given for WX22's waiver of its equity of redemption and the waiver was executed before WX22's default of the mortgage with the drainage district, the trial court erred in failing to hold that the waiver was invalid. Further, because it has not been shown that it would be inequitable to allow the plaintiff to seek redemption of the property, the defense of laches is not available to the defendants.

6. Because the city was aware that the plaintiff was claiming it had a right to seek redemption of the property from the drainage district, it is not a good-faith purchaser of the up- lands.

Affirmed in part, reversed in part, and remanded.

EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT — PRECONDEMNATION NEGOTIATIONS — DRAIN CODE.

The provision of the Uniform Condemnation Procedures Act concerning precondemnation negotiations is applicable to negotiations by a drainage district board to secure property for drain purposes despite the suggestion in the Drain Code that the provisions of the Uniform Condemnation Procedures Act need not be followed until after negotiations are unsuccessful (MCL 213.55[1], 280.470; MSA 8.265[5][1], 11.1470).

*Miller, Canfield, Paddock & Stone* (by *Joseph F. Galvin* and *Joanne B. Faycurry*), and *Vlcko, Lane, Payne & Broder, P.C.* (by *Andrew J. Broder* and *Carol L. Fossee*), for the plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *William P. Hampton* and *Thomas R. Schultz*), for the Lueders Drainage District.

*Campbell, Keenan, Harry, Cooney & Karlstrom* (by *Robert L. Sharbaugh* and *Thomas L. Gruich*), for the City of Rochester Hills.

Before: HOOD, P.J., and SAWYER and E. J. GRANT,* JJ.

PER CURIAM. Plaintiff appeals as of right the

* Circuit judge, sitting on the Court of Appeals by assignment.

trial court's granting of defendants' motion for a directed verdict. We affirm in part and reverse in part.

This case involves negotiations with respect to an eighty-three-acre parcel of property located in Rochester Hills. Although the facts are rather lengthy and complicated, the parties stipulated certain facts, which were made a part of the final pretrial order. Approximately thirty-nine acres of the property are uplands suitable for construction, while the remaining forty-four acres are wetland. Plaintiff's predecessor in interest in the property was WX22, a corporation that assigned its interests to plaintiff in 1991. In June 1988, acting pursuant to an option agreement that was entered into in May 1987, WX22 purchased the property from a private landowner.

Simultaneous with exercising its option on the property, WX22 entered into an option agreement with Bernard Glieberman, giving Glieberman the option to purchase approximately fifty-two of the eighty-three acres, and Glieberman tendered a down payment of $525,000. This agreement was amended in October 1988. The amendment decreased the $1,600,000 purchase price of the fifty-two acres to $1,575,000 and gave Glieberman an additional option of purchasing the remaining wetland acreage for $100,000. Glieberman's right to rescind the agreement and receive a return of his down payment was secured by a $475,000 promissory note by WX22 to Greenpointe Condominiums, of which Glieberman was the principal, and a mortgage on the entire eighty-three acres. This note and mortgage were amended, adding a $125,000 loan from Greenpointe to WX22.

Before WX22's purchase of the property in 1988, the Oakland County Drain Commissioner had begun consideration of the need to improve the

existing drain currently serving the property, an "open" drain known as the Sprague Drain. It was eventually determined that part of the wetland portion of the eighty-three acres would be needed for the construction of a new drain. Negotiations were initiated for the acquisition of the desired land. During these negotiations, which continued after WX22 purchased the property, WX22 pursued plans to develop the upland portion with multiunit condominiums. In June 1989, WX22 and Glieberman sent Lueders Drainage District (Lueders) an initial draft proposal of an agreement to sell the wetland portion to Lueders for $100,000. Throughout the next year, Lueders and WX22 continued to negotiate the sale of the wetlands and the approval of development plans and permits for WX22's proposed project. On March 22, 1990, Lueders adopted a resolution authorizing condemnation of the wetland acreage and an easement area. On April 6, 1990, a representative of the Oakland County Drain Commissioner wrote to WX22 that it was offering $110,000 as just compensation for the wetland property and a screening fence.

Glieberman chose not to exercise his option. WX22 and Lueders entered into a purchase agreement, which required Lueders to pay off the mortgage held by Greenpointe in the event WX22 defaulted. As security for Lueders' payment of that mortgage, WX22 was to place the deed to the uplands in escrow. Under this agreement, WX22 was given a six-month period in which to repay the money extended by Lueders and effectively repurchase the upland acreage. This agreement also included a provision for the sale of the wetland portion by WX22 to Lueders for $110,000, but was conditioned by three matters related to WX22's development of the upland property.

WX22 defaulted on the Greenpointe mortgage. Lueders made payment to Greenpointe, according to the purchase agreement, and entered into a mortgage with WX22. During the following months, a dispute arose concerning WX22's right to redeem. Plaintiff began to make offers to purchase the upland property from Lueders. In July 1991, Lueders sold the uplands to Rochester Hills. This action followed.

In reviewing a grant of a directed verdict, we view the evidence and all reasonable inferences in a light most favorable to the nonmoving party to determine whether a factual question exists. A motion for a directed verdict should be denied if reasonable minds could differ with regard to whether the plaintiff has met the burden of proof. *Rynerson v Nat'l Casualty Co,* 203 Mich App 562, 564; 513 NW2d 436 (1994).

Our first consideration is whether the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et seq.;* MSA 8.265(1) *et seq.,* governs precondemnation negotiations for the acquisition of property to be used for the purposes set forth in the Drain Code, MCL 280.1 *et seq.;* MSA 11.1001 *et seq.* Plaintiff argues that the trial court erred in concluding that there was no violation of the UCPA by Lueders. According to plaintiff, Lueders' failure to make a good-faith offer of just compensation for the wetland property and failure to reveal its appraisal of the property to plaintiff constituted a violation of the UCPA. Under the facts of this case we disagree.

Resolution of this issue involves construction of provisions of the Drain Code and the UCPA. It is a fundamental rule of statutory construction that the courts must ascertain and give effect to the intent of the Legislature and the purpose of enacting a statute. *In re Kurzyniek Estate,* 207 Mich

App 531, 540; 526 NW2d 191 (1994). The Drain Code, which authorizes the securing of lands and rights of way for proposed drains, provides: "If the [lands or rights of way] cannot be secured by negotiation, then the drainage board may proceed under the provisions [governing condemnation]." MCL 280.470; MSA 11.1470. The language of this provision suggests that it is not until negotiations are unsuccessful that condemnation procedures under the UCPA must be followed.

We note, however, that § 5 of the UCPA, MCL 213.55; MSA 8.265(5), extends beyond providing procedures for condemnation and establishes requirements for the precondemnation negotiation process. The Drain Code, on the other hand, does not outline procedures for negotiation. Section 5(1) of the UCPA provides, in part:

> Before initiating negotiations for the purchase of property, the agency shall establish an amount which it believes to be just compensation for the property and promptly shall submit to the owner a good faith offer to acquire the property for the full amount so established. . . . The amount shall not be less than the agency's appraisal of just compensation for the property. The agency shall provide the owner of the property and the owner's attorney with an opportunity to review the written appraisal, if an appraisal has been prepared, or if an appraisal has not been prepared, the agency shall provide the owner or the owner's attorney with a written statement and summary, showing the basis for the amount the agency established as just compensation for the property. If an agency is unable to agree with the owner for the purchase of the property, after making a good faith written offer to purchase the property, the agency may file a complaint for the acquisition of the property in the circuit court . . . . [MCL 213.55(1); MSA 8.265(5)(1).]

Reconciliation of this provision with the Drain Code requires application of additional principles of statutory construction. First, two statutes covering the same subject matter must be construed together to give meaning to both, if at all possible. *Bauer v Dep't of Treasury,* 203 Mich App 97, 100; 512 NW2d 42 (1993), citing *Borden, Inc v Dep't of Treasury,* 391 Mich 495; 218 NW2d 667 (1974). Where two statutes conflict, that which is more specific prevails. *Bauer, supra,* citing *Imlay Twp School Dist v State Bd of Ed,* 359 Mich 478; 102 NW2d 720 (1960). Considering these rules of construction, we conclude that because the UCPA specifically governs an agency's purchase or condemnation of property and the Drain Code governs the securing of land in only a general manner, the UCPA should prevail over the Drain Code with respect to matters of obtaining property. This conclusion is consistent with the apparent intent of the Legislature of creating, through the UCPA, uniform procedures for condemnation by state and private agencies. See OAG, 1985-1986, No 6336, pp 213-214 (January 17, 1986).

Defendants assert that because their dealings with plaintiff involved a voluntary rather than involuntary transfer of property, the UCPA was not applicable. We disagree. This assertion contradicts the language of the UCPA. Clearly the act considers that attempts will be made by an agency to secure lands voluntarily before resorting to condemnation. Indeed, the evidence in this case demonstrates that plaintiff's land was first sought because of the drain commission's desire to have it become part of the Lueders Drain—obviously an involuntary transfer of property was imminent if it could not be secured voluntarily.

Lueders admits that no just compensation amount was established before negotiations began

for the purchase of the wetland portion of the property. Furthermore, the evidence shows that while the drain commissioner's office ordered an appraisal of the wetland portion of the property, WX22 was not afforded an opportunity to review the appraisal. Although defendants indicated that had the appraisal been prepared for condemnation purposes it would have been prepared according to a different appraisal method, our examination of the documentation of the appraisal reveals statements that raise a question concerning whether the appraisal contemplated condemnation. Significantly, the appraisal indicates that the purpose of investigation of the property was to estimate "the Fair Market Value of the fee taking of a portion of the property and compensation for easements." The appraisal also recognizes that the Oakland County Drain Commissioner desired to purchase the wetland property. We find that a question of fact existed concerning whether an appraisal of the property was prepared by Lueders in contemplation of condemnation.

The evidence established that Lueders failed to comply with the UCPA by not establishing a just compensation amount before entering into negotiations to purchase the property. In addition, a reasonable factfinder could conclude that Lueders, by ordering an appraisal and making an offer that was not consistent with that appraisal, did not make the "good faith offer" as required by the UCPA. Even though we resolve this inquiry in plaintiff's favor, there remains the question whether Lueders' failure to comply with the UCPA entitles plaintiff to rescind the purchase agreement.

Just compensation for purposes of condemnation actions is that amount that places a property owner in a condition as good as the owner would

have been in had the taking not occurred. *Detroit v Hamtramck Community Federal Credit Union,* 146 Mich App 155, 157; 379 NW2d 405 (1985); *In re Widening of Bagley Avenue,* 248 Mich 1, 5; 226 NW 688 (1929). WX22 had agreed to sell the entire parcel of property, wetlands and uplands, to Glieberman, with $100,000 designated as the amount for the wetlands. Clearly, the sale of the property as a whole was premised on the intention of developing the uplands. The purchase agreement included as contingencies those things that WX22 wanted to ensure its development of the property in the manner it desired. After examining the record pertaining to the negotiations between WX22 and Lueders, we find that, although not made according to the procedures dictated by the UCPA, Lueders' offer was negotiated between the parties. Since it was a negotiated price and placed the property owner in as good a condition as it would have been, the price constituted just compensation.

Plaintiff also asserts that it was coerced into accepting the purchase agreement with Lueders. The UCPA prohibits coercive action: "In order to compel an agreement on the price to be paid for the property, an agency may not take any . . . action coercive in nature." MCL 213.74; MSA 8.265(24). According to plaintiff, WX22 was coerced by threats of condemnation and the withholding of permits in order to persuade a transfer of the wetland property for $100,000. The exhibits and testimony do not to support this assertion. Viewing the evidence and all reasonable inferences in a light most favorable to plaintiff, we find that plaintiff failed to establish its burden of establishing coercion. A directed verdict with respect to this claim was proper.

Plaintiff seeks attorney fees under MCL

213.66(3); MSA 8.265(16)(3). This section of the UCPA provides for an award of reasonable attorney fees in the event the amount finally determined to be just compensation for condemned property exceeds the written good-faith offer. Because we find $100,000 to be just compensation for the wetland portion of the property, plaintiff is not entitled to attorney fees.

We next address plaintiff's argument that WX22's purported waiver of its equity of redemption was invalid. We review questions of law de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991). WX22 and Lueders entered into a mortgage agreement involving the entire parcel of property to secure Lueders' payment of two notes to Greenpointe after WX22 defaulted on its mortgage with Greenpointe. The WX22/Lueders mortgage contained three pertinent provisions. One provision stated that upon WX22's default Lueders could declare the mortgage due and payable, that WX22 would release the deed to the property to Lueders, and that Lueders would receive title to the property without resort to foreclosure or other legal remedies. A second provision stated that WX22

> acknowledges that the six month term of the Notes and this Mortgage are intended as a substitute for the redemption period Mortgagor would have with respect to foreclosure of the Greenpointe Mortgage, and thus no additional redemption period will apply with respect to any transfer of the deed under this Mortgage.

Finally, a third provision of the mortgage made it clear that the release of the quit-claim deed upon default supersedes and displaces foreclosure rights

and extinguishes all rights and claims WX22 may have in the premises.

A classic legal doctrine prohibits the clogging of the equity of redemption. *Russo v Wolbers*, 116 Mich App 327, 336; 323 NW2d 385 (1982). Courts must carefully scrutinize any transaction in which a mortgagor waives the equitable or statutory right of redemption. *Id.* at 337. The *Russo* Court, *id.* at 336, quoted *Batty v Snook*, 5 Mich 231, 239 (1858):

> "The mortgagor may release the equity of redemption to the mortgagee for a good and valuable consideration, when done voluntarily, and there is no fraud, and no undue influence brought to bear upon him for that purpose by the creditor. But it can not be done by a contemporaneous or subsequent executory contract, by which the equity of redemption is to be forfeited if the mortgage debt is not paid on the day stated in such contract . . . ."

A mortgagor may, however, sell and convey its equity of redemption to the mortgagee in a contract that is separate and distinct from the mortgage agreement and entered into in good faith for good consideration. *Id.* at 337; *Gillam v Michigan Mortgage-Investment Corp*, 224 Mich 405; 194 NW 981 (1923).

In the instant case, WX22 was the mortgagor of two separate mortgage agreements with two separate mortgagees. Although the Lueders mortgage indicates that the six-month repayment period of the note secured by that mortgage was to be a substitute for the redemption period of the Greenpointe mortgage, a reading of the terms of the Lueders mortgage indicates that WX22, through this second mortgage, waived its right to redeem with Lueders under the Lueders mortgage. The

Greenpointe note was fully paid by Lueders and the Greenpointe mortgage discharged, thus removing the necessity of a redemption period under the Greenpointe mortgage. No separate consideration was given for WX22's waivers in the Lueders mortgage, and the waiver was executed before WX22's default with respect to that mortgage.

We find that WX22's waiver of its right to redemption was invalid. The trial court erred in granting defendants' motion for a directed verdict with respect to this issue. Defendants argue that WX22 knowingly bargained away its right to redemption and that, therefore, the waiver should be enforced. In support of this argument, defendants note that WX22 insisted that Lueders pay off the Greenpointe mortgage if it was defaulted, that WX22 was represented by legal counsel, and that WX22 knew that Lueders would give it only a short-term loan. However, because it is likely that WX22 relied on the promise within the purchase agreement that Lueders would pay off the Greenpointe notes and was aware that Lueders' payment was conditioned on the waiver of the right to redemption, it cannot be said that WX22 freely entered into the waiver agreement. Thus, plaintiff should not be estopped, on the basis of promissory estoppel, from asserting an improper waiver of WX22's equity of redemption.

Defendants raise laches as a defense to plaintiff's assertion that the waiver is invalid. Because defendants have not shown that it would be inequitable to grant plaintiff the relief it requests, this defense is not viable. *Badon v General Motors Corp*, 188 Mich App 430, 436; 470 NW2d 436 (1991).

Plaintiff also argues that Rochester Hills was not a good-faith purchaser of the upland portion of the property because it was aware that plaintiff

had asserted its right to redemption. "A good-faith purchaser is one who purchases without notice of a defect in the vendor's title." *Michigan Nat'l Bank & Trust Co v Morren,* 194 Mich App 407, 410; 487 NW2d 784 (1992). The mayor of Rochester Hills testified that she was aware, after Lueders obtained the quitclaim deed following WX22's default, that WX22 asserted a right to redemption and complained that Lueders had deprived it of this right. Because the waiver of plaintiff's right to redemption was obtained improperly, Rochester Hills should have been found to have had notice of a defect in Lueders' title to the property. Therefore, Rochester Hills was not a good-faith purchaser of the uplands.

Lastly, because the parties stipulated that WX22 assigned all of its interest in the property and there is no assertion that the stipulation was not binding, we conclude that plaintiff had standing to assert its claims. *Nuriel v Young Women's Christian Ass'n of Metropolitan Detroit,* 186 Mich App 141, 147; 463 NW2d 206 (1990).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.