BENNOS *v.* WADERLOW.

1. MORTGAGES—RENTS AND PROFITS—EXPIRATION OF EQUITY OF REDEMPTION.

Unless a mortgage secures rents and profits of the mortgaged premises to the mortgagee, he is not entitled to them until after the expiration of the equity of redemption through foreclosure proceedings.

2. SAME—ASSIGNMENT OF RENTS AND PROFITS—FORECLOSURE OF TRUST MORTGAGE—REDEMPTION.

Upon foreclosure of trust mortgage containing assignment of rents and profits, such rights are terminated and are not revived by redemption from foreclosure of such mortgage by mortgagor's creditor who had received a deed from, and given to, mortgagor a land contract.

3. SAME—MORTGAGOR'S RIGHT TO POSSESSION.

The mortgagor cannot be deprived of his right to the possession and benefits of the premises unless that power is clearly given to the mortgagee by the engagement of the parties.

4. EQUITY.

Equity follows the law.

5: MORTGAGES—EQUITY—ASSIGNMENT OF RENTS AND PROFITS.

Although plaintiff's creditor had redeemed from foreclosure sale under a trust mortgage carrying an assignment of rents and profits, where deed and land contract which mortgagor executed and claimed constituted a mortgage failed to contain such an assignment, the mortgagor's offer to do equity in his suit to have the deed and land contract declared a mortgage would not require application of rents and profits toward reduction of debt to defendant creditor, and trial court's provision for such credit was error.

6. CONTRACTS—COURTS.

Courts are not at liberty to make new contracts for parties.

Appeal from Genesee; Elliott (Phillip), J. Submitted October 4, 1939. (Docket No. 21, Calendar No. 40,694.) Decided December 20, 1939. Rehearing denied February 14, 1940.

Bill by James W. Bennos, individually and as administrator of the estate of Gust W. Bennos, deceased, against Benerson A. Waderlow and others to have a deed declared a mortgage, for an accounting, an injunction, and to declare a lien in favor of defendant Waderlow. Decree entered fixing amount to be paid by plaintiff and foreclosing lien. Plaintiffs appeal. Modified and affirmed.

*Fildew & DeGree,* for plaintiff.

*Willard H. Bracklow,* for defendant.

Bushnell, J. Plaintiff, James W. Bennos, and his brother Gust, who is now deceased, obtained a trust mortgage of $56,500 on an apartment building in the city of Flint in 1928. They placed a $4,800 second mortgage on the property to cover the balance due on the cost of construction, and also had some other unsecured debts.

On October 28, 1930, Bennos gave a deed to Waderlow, conveying the premises in question, and on the same day Waderlow gave Bennos a check for $5,000, which Bennos indorsed. Above his signature appears the statement, "For full payment of equity in Bennos Kenmore Apartment at 2602 North Saginaw street." Bennos admitted his signature, but denied that the statement, which is in Waderlow's handwriting, was on the check when it was indorsed. Waderlow admitted that this check was given in a wash transaction for the purpose of showing a greater value in the property and that Bennos did

not receive the proceeds. Waderlow then gave Bennos a land contract, dated December 5, 1930, whereby he agreed to sell the property to Bennos for $71,000. This contract recited a down payment by Bennos of $5,000 (the amount of the check) and a balance to be paid of some $66,000. It is claimed that this $66,000 covers all of the moneys paid by Waderlow and those obligations of Bennos for which Waderlow assumed responsibility.

Failing to procure a new mortgage on the property, Waderlow later purchased, over a period, the outstanding trust mortgage bonds at varying prices, and had new trustees substituted who subsequently foreclosed this mortgage either for the benefit of Waderlow and Bennos or Waderlow alone. When Bennos was served with notice of the foreclosure proceedings, he was advised by Waderlow that it was unnecessary for him to appear and that foreclosure was being had for the purpose of vesting title absolutely in the trustees in order to clear up some defects therein.

The trial court held as to the trust mortgage proceedings that Waderlow was the moving party, that he conspired with others to keep Bennos from appearing, and that the rights he acquired thereunder "should be construed to be a redemption from the first mortgage."

The record contains two written declarations signed by Waderlow, one dated April 24, 1933, and the other, March 18, 1935, in which he recognizes the interest of Bennos in the property and agrees to give credit to Bennos upon the "land contract of an amount equal to one-half the difference between the said bond issue and the cost and expense of redemption from the same," et cetera. The second agreement adds an undertaking to divide any profit that may be realized if the property is sold to others.

The testimony of both Waderlow and Bennos is most unsatisfactory in many particulars, each of them seemingly suffering from a "lapse of memory." It is unnecessary to recite more of the complicated facts surrounding the transactions between the parties.

In February of 1936, Bennos filed a bill in which he sought a decree holding the deed to be a mortgage, the foreclosure of the trust mortgage to be a redemption, and that Waderlow be given an equitable lien for such moneys as might be found to be due him after an accounting. Henke was made a party defendant on the theory that whatever interests he might have in the premises were held solely for the benefit of Waderlow. Also joined as defendants were Colby and Roehl, the successor trustees, and Costello, who Bennos claimed is an agent and attorney for Waderlow. Bennos asked the court to restrain defendants from interfering with his possession, management, and operation of the premises "except through the foreclosure of the equitable mortgage which may be decreed in favor of Benerson A. Waderlow, after the amount of the same shall have been determined by this court."

The trial court treated the bill of Bennos as one to redeem and held that, although the answer of defendants did not seek a foreclosure of the "mortgage" or deed of October 28, 1930, this deed should be set aside and plaintiff relieved from the trust mortgage foreclosure and sale and be required to pay to Waderlow the amounts which he had advanced or obligated himself to pay. The court also, under Bennos' offer to do equity, held that, although the "mortgagor is generally entitled to the rents and profits until the period of redemption has expired," because of the time which had elapsed since the trust foreclosure decree, "plaintiff should have

the right to his apartment and to the room which James Bennos is using as a restaurant until the equity of redemption as hereinafter provided for has expired, and that other rents and profits received by the receiver should be applied on the indebtedness.''

The trial judge determined that plaintiff should pay the amount of the established indebtedness within 45 days and, in default thereof, defendant Waderlow might proceed to sale as provided for foreclosures in chancery.

Plaintiff contends that the court erred in the application of the rents and profits and in construing his bill as one to redeem.

The relation between Bennos and Waderlow is that of debtor and creditor. Waderlow's right to application of the rents and profits on the indebtedness is not secured to him under the ''land contract,'' and it is settled law that, until after the expiration of the equity of redemption through foreclosure proceedings, a mortgagee is not entitled to the rents and profits of the sold or mortgaged premises. *Nusbaum* v. *Shapero,* 249 Mich. 252, 258.

There was an assignment of rents under the trust mortgage but those rights have been terminated, and were not revived by Waderlow's redemption from the foreclosure of that mortgage.

It is argued that the trial court's disposition of the rents and profits was justified under Bennos' offer to do equity.

''It has been the definite and continuous policy of this State to save to mortgagors the possession and benefits of the mortgaged premises, as against the mortgagees, until expiration of the period of redemption.'' *Massachusetts Mutual Life Ins. Co.* v. *Sutton,* 278 Mich. 457, and cases cited at page 461.

The mortgagor cannot be deprived of his right to the possession and benefits of the premises unless that power is clearly given to the mortgagee by the engagement of the parties. Equity follows the law and the application of general equitable principles cannot set aside the rights of Bennos, unless there is a definite contractual waiver of those established and recognized rights. While "consideration must be given to circumstances which differentiate the nature of the transaction from being one of a mere loan, and also to all the facts or circumstances which will establish the true intention of the parties and which reveal the equities as between the parties," *Reid* v. *Dowd*, 257 Mich. 492, and although in *Huyck* v. *Graham*, 82 Mich. 353, we treated plaintiffs' bill of complaint as one to redeem even though that relief was not prayed, courts are not at liberty to make new contracts for the parties.

The court was in error in providing for the application of the rents and profits to the mortgage indebtedness, and Waderlow is not entitled to credit therefor.

The record contains a computation of an accounting between the parties, some items of which are not disputed, and it is stipulated that none of the items need be disturbed on appeal and that the circuit court may complete the accounting in the event that decision on the legal aspects of the case requires a reversal of the decree in whole or in part.

The decree must be vacated and the cause remanded for the purpose of completing the accounting in the light of this opinion and the entry of a new decree not inconsistent herewith. It is so ordered, with costs to appellants.

BUTZEL, C. J., and WIEST, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.