KUBCZAK v CHEMICAL BANK & TRUST COMPANY

Docket No. 105755. Argued December 9, 1997 (Calendar No. 6). Decided
March 24, 1998.

Sally Kubczak, a real estate agent for Bay City Realty Company,
slipped and fell while showing a home listed by Aldon and Nancy
Jo Hines with Dial Real Estate. She sought redress in the Bay Cir-
cuit Court against the Hineses and their mortgagee, Chemical Bank
& Trust Company, alleging that the slip and fall was caused by a
dangerously slippery garage floor. At the time of the injury, the
Hineses had moved out of the house, and the bank had foreclosed
the property and had received a sheriff's deed, but the six-month
redemption period had not expired. The court, Lawrence M. Bie-
lawski, J., denied the bank's motion for a directed verdict, ruling
that the evidence would permit the jury to find that the bank at
least had been a possessor of the property, even if it was not the
exclusive possessor, that the Hineses also were possessors, and,
thus, that the plaintiff could have been the bank's invitee. There-
after, the court entered judgment on a jury verdict for the plaintiff,
finding that the bank was a possessor of the premises at the time
of the fall, that it had been negligent, and that its negligence was a
proximate cause of the injury. The Court of Appeals, MCDONALD,
P.J., and MARKEY and R. I. COOPER, JJ., affirmed in an unpublished
opinion per curiam (Docket No. 166480). The bank seeks leave to
appeal.

In an opinion by Justice BRICKLEY, joined by Chief Justice
MALLETT, and Justices BOYLE, WEAVER, and TAYLOR, the Supreme
Court held:

The bank did not exercise the requisite dominion and control
over the property and, therefore, cannot be considered a possessor
for purposes of premises liability.

1. Premises liability is conditioned upon possession of and con-
trol over land. Possession for purposes of premises liability does
not turn on a theoretical or impending right of possession, but
instead on the actual exercise of dominion and control over the
property. Liability for an injury due to defective premises ordinarily
depends on power to prevent the injury and therefore rests prima-
rily on one who has control and possession. Liability for negligence

does not depend on title; a person is liable for an injury resulting from negligence with respect to a place or instrumentality that is in his control or possession, even though he is not the owner. It is appropriate to impose liability on the person who created the dangerous condition or who had knowledge of and was in a position to eliminate the dangerous condition.

2. In this case, the bank had no legal right of possession during the six-month redemption period. While a mortgagee can obtain possession for consideration and pursuant to an explicit agreement, nothing in the record indicates that any agreement was made between the bank and the Hineses that would have provided the bank with the immediate right to possess the foreclosed property. The fact that the bank was the high bidder at foreclosure proceedings did not grant it any rights of ownership or possession, but, rather, gave it a contingency interest in the property with respect to title ownership. Accordingly, any interest the bank had would not vest until after expiration of the redemption period. The bank's only involvement with the property during the redemption period was undertaken in connection with the foreclosure proceedings and for the sole purpose of preserving the value of the premises during that period.

Reversed and remanded.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that there was sufficient evidence for the jury to hold the mortgagee liable. It was reasonable for the jury to find that the mortgagee's actions rose to the level of fraud, oppression, or overreaching. Further, a question of fact existed in this case concerning whether the mortgagee took possession and control of the property. A reasonable jury could have concluded that the Hineses were forced out of their house, and the bank then became the possessor by exercising control over it.

The trial court did not err in determining that the plaintiff's status is that of a business invitee. An invitation to enter a premises need not be express. In this case, it may be implied, even though the mortgagee did not initially invite the plaintiff real estate agent onto the property. The plaintiff's presence on the property had the potential of being economically beneficial to the mortgagee. Her efforts to sell the house were sufficiently connected with the bank's business interests to render her the bank's business invitee. Furthermore, the mortgagee was in the best position to make the premises safe because it held the key to the house and was in control of the property.

*Trogan & Trogan, P.C.* (by *Bruce F. Trogan*), for the plaintiff.

*James S. Jamo* for the defendant.

Amicus Curiae:

*Warner, Norcross & Judd, L.L.P.* (by *Jeffrey O. Birkhold*), for Michigan Bankers Association.

BRICKLEY, J. In this premises liability action, we consider whether defendant-appellant Chemical Bank, as the mortgagee and nominal owner during the mortgage foreclosure redemption period, should be considered a "possessor" for purposes of premises liability. In the present case, plaintiff-appellee realtor was injured while showing the foreclosed property during the statutory right of redemption period. Her ensuing premises liability action resulted in judgment against defendant-appellant Chemical Bank, and the Court of Appeals affirmed. We find that the bank was not a "possessor" of the property and, therefore, reverse the decision of the Court of Appeals and remand this case to the circuit court for entry of a judgment of no cause of action in favor of defendant-appellant Chemical Bank.[1]

I

In 1979, Aldon and Nancy Hines purchased a house in Bay City. They financed most of the purchase price with a mortgage that they obtained from defendant-appellant Chemical Bank & Trust Company. The ten-

---

[1] The bank also appeals the decision below, finding that plaintiff was a business invitee of the bank. Our determination that the bank was not a "possessor" for purposes of premises liability makes resolution of that issue unnecessary.

year mortgage provided for a "balloon" payment of
the entire balance in June 1989. The Hineses lived in
the house from 1979 until late October 1989.

Over the years, the Hineses occasionally fell behind
on their payments, but were able to catch up.
Employment problems caused more serious difficulty
in 1988 and 1989. The parties arrived at an interim
solution, but soon the Hineses were again in arrears.
Their final payment was made in August 1989. By that
point, the final balloon payment was overdue.

On August 1, 1989, the bank notified the Hineses in
writing of its intention to begin a foreclosure by
advertisement. MCL 600.3201 *et seq.*;   MSA 27A.3201
*et seq.* The bank's letter gave a figure in excess of
$50,000 for the total amount due, including principal,
interest, and late fees.

In September 1989, the Hineses listed their house
for sale with Dial Real Estate. In October, the bank
initiated the foreclosure process. Near the end of that
month, the Hineses moved out of the house and into
an apartment. The parties disagree with regard to the
reason for the move. The Hineses say the bank
ordered them to move and that Ms. Hines mailed
their only key to W. Roger Mikusek, the bank loan
officer who was handling this file. Mr. Mikusek and
the bank deny those allegations.

A sheriff's sale was held in November 1989. The
bank bid the amount owed by the Hineses, and
received a sheriff's deed. Under the foreclosure stat-
ute, however, a homeowner has six months to
redeem a foreclosed house, and a sheriff's deed

does not actually take effect until the redemption period expires.[2]

After moving out in October, Nancy Hines instructed the utility companies to have all the service billings put in the name of the bank. The bank's only involvement with the property during the redemption period was to observe the house from the street, confirm with the realtor that the heat was operating in the home, pay the utilities, and list the property on the bank's insurance policy because the homeowner had allowed the insurance coverage to lapse for nonpayment of premiums. At no time did any representative of the bank enter the house.[3]

---

[2] The applicable redemption statute, MCL 600.3240(4); MSA 27A.3240(4), provides in part:

> [I]f the amount claimed to be due on the mortgage at the date of the notice of foreclosure is more than 66-2/3% of the original indebtedness secured by the mortgage, the redemption period shall be 6 months.

This provision is now found in MCL 600.3240(8); MSA 27A.3240(8), as amended by 1996 PA 214.

MCL 600.3236; MSA 27A.3236 governs the effect of a mortgagor's failure to redeem:

> Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named . . . all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage . . . .

[3] Although the parties stipulate that the redemption period was six months, the period is shortened to one month if the mortgagors *abandon* the property. MCL 600.3240(6); MSA 27A.3240(6) (this provision is now MCL 600.3240[10]; MSA 27A.3240[10], as amended by 1996 PA 214). Although the bank evidently considered whether it could invoke that provision, its apparent conclusion was that the Hineses' action of listing the property for sale precluded the bank from arguing that they had abandoned the house.

At some point, the Hineses renewed the listing for an additional three months and reduced the asking price. The bank emphasizes that this demonstrates the Hineses' continued exercise of dominion over the property.

Plaintiff Sally J. Kubczak is a real estate agent for Bay City Realty Company. On March 14, 1990, six weeks before the end of the redemption period, she made arrangements with the listing agency, Dial Real Estate, to show the house to one of her clients.[4] As she and her clients were leaving through the garage, she slipped and fell, sustaining a broken hip that required surgery. Plaintiff alleges that her fall was caused by a combination of oil, water, and leaves that made the garage floor dangerously slippery.

The last day for the Hineses to redeem the property from foreclosure was May 3, 1990. A few weeks before that date, another real estate agent found potential buyers but, because of the foreclosure situation and IRS tax liens, it became apparent that the deal could not be finalized before May 3. The bank agreed to sell the house for the real estate agency after the sheriff's deed took effect, and, on May 9, 1990, the house was sold for $65,000. The bank received approximately $58,000, which covered the mortgage balance, interest, late fees, and foreclosure costs, while the IRS realized about $4,000 from its liens. After the usual closing costs were paid, the real estate agency received as commission the remainder of the proceeds, an amount slightly under $3,000. The

---

[4] Dial controlled access to the property by placing a key, obtained from the Hineses, in a realtor's lockbox on the door of the house. It was through the use of this key that plaintiff gained access to the house on the day she was injured.

Hineses received nothing from the sale, owing both to the fact that their equity of redemption had expired and that no balance was left after everyone else had been paid.

In October 1990, plaintiff brought the present suit against Chemical Bank, Dial Real Estate Agency, and the Hineses. Dial settled the claim for $10,000, and the cause continued to trial against the bank.[5] The basis for plaintiff's complaint was that, at the time of her March 1990 accident, the bank was the "possessor" of the property and she was a business invitee of the bank. The trial court denied the bank's motion for a directed verdict, ruling that the evidence would permit the jury to find that the bank had been a possessor of the property, even if the possession had been nonexclusive and the Hineses also had remained possessors. The bank preserved this issue by timely objection. The jury found for plaintiff and, answering specific questions, found that the bank was a possessor of the premises at the time plaintiff fell and was negligent, and that the bank's negligence was a proximate cause of her injury. After reductions for comparative negligence, the settlement with Dial, and payments from collateral insurance sources, plaintiff was awarded approximately $78,500, plus costs and judgment interest.

In an unpublished per curiam opinion, the Court of Appeals upheld the circuit court's ruling that a jury could find the bank to have been in possession of the premises, stating:

---

[5] A default judgment was entered against the Hineses, who have since discharged the judgment in bankruptcy.

The trial court did not err in refusing to direct a verdict in favor of defendant on the issue of possession and control. Premises liability is conditioned upon the presence of possession and control, not necessarily ownership. *Merritt v Nickelson*, 407 Mich 544; 287 NW2d 178 (1980). Moreover, a mortgagee may be placed in possession by the mortgagor. *Morse v Byam*, 55 Mich 594; 22 NW 754 (1885). The evidence presented was sufficient to support the verdict that defendant was a possessor of the premises.[6]

The bank applied for leave to appeal, which this Court granted. 454 Mich 921 (1997).

II

It is well established, as the Court of Appeals noted, that "[p]remises liability is conditioned upon the presence of both possession and control over the land." *Merritt v Nickelson, supra* at 552; *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564; 563 NW2d 241 (1997).

In the present case, the bank had no legal right of possession during the six-month redemption period. It is certainly true, as the Court of Appeals stated, that the Hineses, as mortgagors, had the authority to place the mortgagee-bank in possession of the premises. However, we have consistently given careful scrutiny to any transaction in which a mortgagor waives its statutory right of redemption. The rule we stated in *Massachusetts Mut Life Ins Co v Sutton*, 278 Mich 457, 461; 270 NW 748 (1936), remains sound:

[I]t has been the definite and continuous policy of this State to save to mortgagors the possession and benefits of

---

[6] Issued February 9, 1996 (Docket No. 166480).

the mortgaged premises, as against the mortgagees, until
expiration of the period of redemption.

Thus, a mortgagee can obtain possession, but only for consideration, *id.* at 463, and pursuant to an explicit agreement. *Bennos v Waderlow*, 291 Mich 595, 600; 289 NW 267 (1939); *Russo v Wolbers*, 116 Mich App 327; 323 NW2d 385 (1982).[7]

Nothing in the record indicates that any agreement was made between the bank and the Hineses that would provide the bank with the immediate right to possess the foreclosed property. The fact that the bank was the high bidder at foreclosure proceedings did not grant it any rights of ownership or possession, but, rather, gave the bank a contingency interest in the property with respect to title ownership. Accordingly, any interest the bank had would not vest until after expiration of the redemption period.

The bank asserts that because it was not entitled to immediate occupation of the land under our mortgage law, it could not have been a "possessor" of the property in question for purposes of premises liability. Although we agree that the bank had no legal right of possession before May 3, 1990, possession for purposes of premises liability does not turn on a theoretical or impending right of possession, but instead depends on the actual exercise of dominion and control over the property. *Merritt, supra.* If we were to accept the bank's formulation, one who wrongfully exercised dominion and control over property would

---

[7] Alternatively, a mortgagee can gain possession if the mortgagor *abandons* the property. See n 3. The plaintiff has disclaimed this theory in both the circuit court and this Court.

escape liability solely on the basis that there was no legal or theoretical possession.

The purpose behind the principle requiring actual possession and control was best expressed in *Nezworski v Mazanec*, 301 Mich 43, 56; 2 NW2d 912 (1942):

> "It is a general proposition that liability for an injury due to defective premises ordinarily *depends upon power to prevent the injury* and therefore rests primarily upon him who has control and possession."

> *        *        *

> "Liability for negligence does not depend upon title; a person is liable for an injury resulting from his negligence in respect of a place or instrumentality which is in his control and possession, even though he is not the owner thereof." [Citations omitted; emphasis added.]

In the present case, plaintiff alleges that she was injured because the parties who were in possession and control allowed a dangerous condition to develop on the garage floor. As we observed in *Nezworski, supra*, it is appropriate to impose liability on the person who created the dangerous condition or who had knowledge of and was in a position to eliminate the dangerous condition. Plaintiff asserts that the bank's actions toward the mortgaged property meet the requisite level of control for purposes of premises liability. We disagree.

The record before us indicates that the bank commenced foreclosure by advertisement proceedings on October 5, 1989. A foreclosure sale occurred on November 3, 1989, and the statutory period of redemption expired on May 3, 1990. The bank's only involvement with the property during the redemption

period was to observe the house from the street, pay the utilities after the Hineses changed the billing, confirm with the realtor that the heat was operating in the home, and list the property on the bank's insurance policy once the Hineses allowed their insurance to lapse.[8] On these actions, which comprise the sum and substance of the bank's conduct toward the mortgaged premises, we do not find the requisite control. In reviewing a trial court's ruling on a motion for a directed verdict, this Court examines "the testimony and all legitimate inferences that may be drawn in the light most favorable to the [nonmoving party]." *Mulholland v DEC Int'l Corp*, 432 Mich 395, 415-416; 443 NW2d 340 (1989). Here, making all reasonable inferences in plaintiff's favor, we conclude that the trial court erred in denying the bank's motion for a directed verdict and, accordingly, the Court of Appeals erred in affirming the trial court's ruling.

It is clear to us that the bank's limited actions during the redemption period were taken in connection with the foreclosure proceedings and for the sole purpose of preserving the value of the premises during the redemption period.[9] Rather than accepting plaintiff's assertion that these actions evidenced an exer-

---

[8] The statutes applicable to mortgaged property permit a mortgagee to maintain payments of taxes and insurance premiums if the mortgagor fails to make those payments, particularly during a redemption period. MCL 600.2927; MSA 27A.2927; MCL 600.3240; MSA 27A.3240.

[9] Plaintiff asserts that the bank's officer, W. Roger Mikusek, made misrepresentations to the Hineses concerning their rights during the redemption period. We note that the alleged misrepresentations, even if true, were not actions toward the *property* and, although potentially actionable by the Hineses in their own right, are irrelevant to the instant issue of premises liability. Similarly, the dissenting opinion's discussion of possible fraud, oppression, or overreaching does not bear on whether the bank exercised the requisite control to subject it to liability for plaintiff's injury under a premises liability theory.

cise of control over the property, we believe that the bank's actions are better characterized as those of a secured party concerned with preserving the value of its collateral asset.

III

On the record before us, we can locate no basis for finding the bank liable as a "possessor" for the painful accident that befell Ms. Kubczak. We find that the bank did not exercise the requisite dominion and control over the property and, therefore, cannot be considered a "possessor" for purposes of premises liability. Accordingly, we reverse the decision of the Court of Appeals and remand this case to the circuit court for entry of a judgment of no cause of action in favor of defendant-appellant Chemical Bank.

MALLETT, C.J., and BOYLE, WEAVER, and TAYLOR, JJ., concurred with BRICKLEY, J.

KELLY, J. I respectfully dissent. The issue in this case is whether, for purposes of determining premises liability, a mortgagee can be considered a "possessor" during the mortgage foreclosure redemption period. If so, can the mortgagor's real estate agent be the mortgagee's business invitee?

When evaluating a motion for directed verdict, the trial court must consider the evidence in the light most favorable to the nonmoving party. All reasonable inferences are made in the nonmoving party's favor. *Locke v Pachtman*, 446 Mich 216, 223; 521 NW2d 786 (1994). Drawing all reasonable inferences in favor of the plaintiff, I find that there was sufficient evidence for the jury to hold the mortgagee liable. Therefore, I would affirm the decision of the Court of

Appeals. The trial court did not err in denying defendant's motion for directed verdict.

I

The majority relies on the rarely cited case of *Massachusetts Mut Life Ins Co v Sutton*[1] for the proposition that it is the policy of this state "to save to mortgagors the possession and benefits of the mortgaged premises, as against the mortgagees, until expiration of the period of redemption." The next sentence of that opinion reads: "This court has attempted to guard the policy and protect the mortgagor against the opportunity for fraud, overreaching, or oppression by the mortgagee . . . ." *Id.*

I believe that the mortgagee's agent, W. Roger Mikusek, could have been guilty of fraud, overreaching, or oppression. There is evidence that, after the foreclosure sale, Mr. Mikusek led the Hineses to believe that they were not entitled to retain possession of the house during the redemption period.

Specifically, there was corroborated testimony that Mr. Mikusek told the Hineses to move out of the house. He demanded the key, and Mrs. Hines sent it to him. Although the bank denies these allegations, a jury could have found Mrs. Hines to have been the more credible witness.

Additionally, there is testimony that Mr. Mikusek asked the real estate agent to enter the house to ascertain whether it was adequately heated. The bank paid the utility bills for the house as they fell due after the Hineses moved out. The bank took these actions, no doubt, to protect its collateral; however, it

---

[1] 278 Mich 457, 461; 270 NW 748 (1936).

was reasonable for the jury to use them as the basis for a finding that the bank took possession and control of the house.

Mr. Mikusek testified that the bank's legal counsel instructed him that the bank had no legal right to possession of the property during the redemption period. But Mr. Mikusek's handwritten note stating, "Hines, ours today, 11/3/89," suggests that the bank did take possession after the foreclosure sale. Again, on the basis of this evidence, the jury reasonably could have found in the plaintiff's favor.

Facts in evidence showing misrepresentations by the bank are that the Hineses moved out of the house in October, 1989, and never returned. They spent $3,975 to rent an apartment for six months, an expenditure they say was made necessary only by the bank having taken possession of the house. Mrs. Hines testified that she would not have rented an apartment had she believed herself entitled to remain in the house. She testified that Mr. Mikusek told her to "[j]ust get out or I will get you out personally." Also, she testified that she was forced from her home and never would have left voluntarily. Rather, she left in reliance on Mr. Mikusek's misrepresentations. The majority finds that these misrepresentations are irrelevant to the issue of premises liability. However, the jury may have concluded that they led to the ouster of the Hineses which resulted in the bank taking possession of the premises.

Even though a mortgagee normally is not entitled to take possession of property until after expiration of the redemption period, there was evidence here that that is what happened. It was reasonable for the jury to find that the mortgagee's actions rose to the

level of fraud, oppression, or overreaching. A mortgagee should not be allowed to shield itself from tort liability if it strong-arms a mortgagor into vacating his premises prematurely.

As this Court recently stated in *Orel v Uni-Rak Sales Co, Inc,*[2] "Who had possession of a piece of land presents a factual issue for resolution by the jury." A question of fact existed in this case concerning whether the mortgagee took possession and control of the property. A reasonable jury could have concluded that the Hineses were forced out of their house, and the bank then became the possessor by exercising control over it. Therefore, I would affirm the decision of the Court of Appeals.

II

Next, the legal status of the plaintiff must be identified to permit a determination of the duty of care owed to her. The issue is whether the trial court erred in finding, as a matter of law, that if the mortgagee was a possessor of the house, plaintiff was mortgagee's business invitee.

The mortgagee argues that, because it did not invite plaintiff onto the property, the plaintiff is not its invitee. The invitation to enter the premises need not be express. According to the standard jury instructions, "An invitation may be either express or implied." SJI2d 19.01. It may be implied even though the mortgagee did not initially invite the plaintiff real estate agent onto the property.

Additionally, the mortgagee argues that the plaintiff is not its invitee because the plaintiff was not on the

---

[2] 454 Mich 564, 569; 563 NW2d 241 (1997).

property for any business purpose of the mortgagee. It points out the policy behind imposing a higher duty of care on one who invites a business visitor onto his premises. The policy is that an invitor potentially has some pecuniary gain from the visit and is the person in the best position to make the property safe at the time of the business visit. That policy is not advanced, it argues, by imposing the duty on a party who did not invite the person onto his premises for the party's business purpose or pecuniary interest.

Here, plaintiff's presence on the property had the potential of being economically beneficial to the mortgagee. Had she sold the house, the mortgagee would have benefited, because the proceeds of the sale would have satisfied the outstanding debt owed to it. Furthermore, the mortgagee was in the best position to make the premises safe, because it held the key to the house and was in control of the property.

The trial court did not err in determining that the plaintiff's status in this case is that of a business invitee. As a real estate agent, she was invited to go onto real property for a purpose directly or indirectly concerning business dealings with the possessor of the land. 2 Restatement Torts, 2d, § 332, p 176. The bank was not required to directly initiate business dealings with her in order to render her a business invitee. Plaintiff's efforts to sell the house were sufficiently connected with the bank's business interests to render her the bank's business invitee.

I am not suggesting that any realtor who shows a house at the request of its owner is a business invitee of the owner's mortgagee or other lienholders. The present case is factually unusual. Under its particular

circumstances, I find that the plaintiff was a business invitee of the bank.

I agree with the Court of Appeals that the evidence was sufficient to support the verdict that the bank was a possessor of the premises. I also agree that the trial court did not err in concluding as a matter of law that the plaintiff was a business invitee of the bank. Therefore, I would affirm the decision of the Court of Appeals.

CAVANAGH, J., concurred with KELLY, J.