*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAN BOWERMAN,

        Plaintiff-Appellant,

v

RED OAK MANAGEMENT CO., INC., and
WESTVELD SERVICES, LLC,

        Defendants-Appellees,

and

BOB'S ASPHALT & PAVING, INC.,

        Defendant.

UNPUBLISHED
September 12, 2024

No. 366338
Montcalm Circuit Court
LC No. 2022-028824-NO

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

Plaintiff Jan Bowerman appeals by right the order of the Montcalm Circuit Court granting defendants Red Oak Management Co., Inc., (Red Oak) and Westveld Services, LLC, (Westveld) summary disposition of plaintiff's claims pursuant to MCR 2.116(C)(10). We affirm.

## I. FACTS

On the morning of October 30, 2021, about an hour before sunrise, plaintiff was taking out her trash at her apartment complex when she stepped into a hole, or a "trench" as the parties describe it, in the parking lot and fractured her ankle. The trench was created by defendant Westveld during the excavation of a recently poured concrete slab for the apartment's dumpster. Defendant Westveld was hired by defendant Red Oak to replace concrete in various areas around the apartment complex. Westveld poured the concrete for the dumpster platform on or around October 14, 2021. After Westveld was finished, the small trench was allegedly going to be filled by Bob's Asphalt & Paving. Westveld states in its brief that, "Normally, Bob's Asphalt would come within a day or two after Westveld completed its work to fill in the trenches. But on this

-1-

occasion, Bob's Asphalt did not do this until 10 days after Westveld was done with its work." To make sure tenants could access the dumpster, defendant Westveld moved it to a grassy area on the right side of the concrete slab. The narrow trench was ten feet long and four inches deep. The trench ran along the front of the concrete slab where the dumpster is typically located.

Plaintiff was 75 years old at the time of her fall and had lived at the Stanton Park Apartments, a residential building for seniors, for about eight years. Before she retired in 2018, plaintiff was actually a site manager for defendant Red Oak for 19 years, and was the site manager at the Stanton Park Apartments for about 10 of those years. Plaintiff kept detailed personal notes about the condition of the Stanton Park Apartments even after she retired. Plaintiff's note from October 14, 2021, states, "Dumpster was moved to grass area." Another note from October 14th goes on to say, "Sidewalks were being teared out [sic]. Started to rain. The company left cement and trash left laying on parking lot areas. No signs—caution tapes—no cones was put out [sic]. From the 14th of afternoon to 10-17-21 nothing was done on sidewalks." Plaintiff's note from October 18, 2021, states, "Sidewalk repairs started up again." Finally, her note labeled October 30, 2021, states, "I fell into trench took my trash out at 7:30 a.m. was dark. Called ambulance (my brother called)." Plaintiff testified as to how she fell as follows:

> I went out my apartment, turned to the left, went about 80 feet to that side door. And that side door, there's a handicapped sidewalk. I walked down to the end of the sidewalk. And then about – once you get past that sidewalk, it's about eight feet or ten feet, and I'm at the dumpster, and that's the route I always use to take out my trash.
>
> Well, that particular morning, I didn't wait [for daylight]. I looked out the side door, and I noticed that I could still see the sidewalk. It was still dark, but there was still light on the sidewalk. I went down the sidewalk, and when I – I knew I was going to have to go to the parking lot to miss some of the area, but – so I went out to the parking lot. And once I got to the middle of the parking lot, it was all black. I couldn't see, so then I spotted the dumpster. They had moved it off the patio slab it was on. I – I seen that because it had like a reflector on it, and there was a little light coming from the trees from the streetlight. So I kept my eye on that dumpster, and I started walking toward it. And before – before I knew it, my foot went right to the edge. At that time, I didn't know what it was, but it went right to the edge of that trash, and I fell right down – right down in the hole."

Plaintiff further testified that she was aware of the trench's location and that she takes her trash out every day. Plaintiff explained that on the morning of the accident, she exited the side door of the apartment building and walked down the sidewalk to the parking lot. Once she was in the parking lot, she "went way out toward the middle of the parking lot" to "stay away from [the concrete slab]." So once plaintiff was in the middle of the parking lot, she "spotted the dumpster reflection light" and started walking towards it when she tripped and fell over the trench. Photos of the trench show that the sidewalk connects to the back-end of the concrete slab, providing tenants a pathway to the dumpster.

Plaintiff filed a complaint in the circuit court alleging violation of MCL 554.139 against Red Oak, negligence against Westveld, and negligence against Bob's Asphalt & Paving, Inc.

Bob's Asphalt & Paving, Inc. was dismissed as a defendant when the trial court granted its motion for summary disposition. The trial court's order does not explain its reasoning, but Bob's Asphalt argued in its motion that it did not create the trench and was unaware of its existence until it was asked to fill, and did fill the trench on November 10, 2021. Defendants Westveld and Red Oak each subsequently filed motions for summary disposition. The trial court found that Red Oak did not violate MCL 554.139 because the parking lot was fit for its intended use, and granted Red Oak summary disposition. The trial court also found that Westveld was entitled to summary disposition of plaintiff's negligence claim under MCR 2.116(C)(10) because the trench was an open and obvious condition without special aspects that would preclude recovery. Plaintiff now appeals.

## II. DISCUSSION

Plaintiff argues the trial court erred in granting defendants summary disposition of plaintiff's claims. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 109; 1 NW3d 44 (2023) (citation omitted). A (C)(10) motion "should be granted if the evidence submitted by the parties 'fails to establish a genuine issue regarding any material fact, [and] the moving party is entitled to judgment as a matter of law.' " *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008) (citation omitted). A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id*. at 425, quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Issues of statutory interpretation are also reviewed de novo. *Allison*, 481 Mich at 424. The goal of statutory interpretation is "to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute." *Id*. at 427, quoting *G.C. Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420; 662 NW2d 710 (2003). If the language in a statute is clear, "we presume that the Legislature intended the meaning expressed." *Id*.

## B. MCL 554.139

While this appears to be a classic premises liability case, plaintiff has only asserted a statutory claim against defendant Red Oak, and plaintiff confirmed in the lower court proceedings that she is not making a claim of common law premises liability. Rather, plaintiff claims Red Oak violated its duty to her as a lessor of the property under MCL 554.139 when it failed to keep the parking lot fit for its intended use and violated local health and safety laws. MCL 554.139(1) provides:

In every lease or license of residential premises, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

(b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants [sic] wilful or irresponsible conduct or lack of conduct.  [MCL 554.139].

This statute "provides a specific protection to lessees and licensees of residential property in *addition* to any protection provided by the common law." *Allison*, 481 Mich at 425 (emphasis in original).  Thus, if Red Oak had a duty under MCL 554.139(1)(a) or (b) to fill the trench, then plaintiff could proceed on her statutory claim even if a negligence claim would be barred by the "open and obvious danger doctrine." *Id.*  However, "a breach of the duty to maintain the premises under MCL 554.139(1)(a) or (b) would be construed as a breach of the terms of the lease between the parties and any remedy under the statute would consist exclusively of a contract remedy." *Id.* at 425-426.  Plaintiff's claim against Red Oak is therefore a contract claim under the law.

The first question is whether MCL 554.139(1) subsection (a), (b), or both, applies to the parking lot at issue here.  The plain language of the statute dictates that the covenant of "fitness for the use intended by the parties" in (1)(a) applies to both "premises" and "common areas", while the covenant of "reasonable repair" in (1)(b) applies only to "premises."  See *Allison*, 481 Mich at 431-432.  Our Supreme Court has held that parking lots within a leased residential property that are shared by the tenants constitute "common areas" under MCL 554.139(1)(a), *id.* at 428, and thus the lessor's duty to repair under (1)(b) does not apply to parking lots, *id.* at 435.[1]  Under (1)(a), a lessor has a contractual duty to keep the parking lot "fit for the intended use by the parties." *Id.* at 429.  "[MCL 554.139(1)(a)] does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit for use as a parking lot." *Id.* at 430.  "Mere inconvenience of access…will not defeat the characterization of a lot as being fit for its intended purposes." *Id.*

The next question is whether the covenant in (1)(a) encompasses the duty to keep the parking lot free from the defect at issue, i.e., the trench.  Because only the covenant for fitness for intended use applies to common areas, "we can reasonably infer that the Legislature intended to place a less onerous burden on the lessor with regard to common areas.  Keeping common areas fit for their intended use may well require a lessor to perform maintenance and repairs to those areas, but may conceivably require repairs less extensive than those required by the second covenant[,]" in subsection (1)(b). *Allison*, 481 Mich at 433.  The intended use of a parking lot includes parking vehicles and walking on the lot.  See *id.* at 429.  "A parking lot is generally

---

[11] Plaintiff's brief dedicates much space to analyzing MCL 554.139(1)(b) and alleging that the lighting in the parking lot violated applicable local health and safety laws.  The trial court addressed (1)(b) in its order, but conditioned its analysis with, "To the extent that the parking lot was considered part of the premises and subject to the higher duty under [MCL 554.139]…," and then concluded that Red Oak had not violated any applicable health and safety law.  However, we need not address subsection (1)(b) of the statute because Michigan law is clear that parking lots constitute "common areas" of an apartment complex, and are not part of the "premises" described in (1)(b).

considered suitable for the parking of vehicles as long as the tenants are able to park their vehicles in the lot and have reasonable access to their vehicles." *Id*. This obligation "would commonly be to ensure that the entrance to and exit from, the lot is clear, that vehicles can access parking spaces, and that tenants have reasonable access to their parked vehicles." *Id*. Here, the tenants also were likely to traverse the parking lot in order to take out their trash because the dumpster was located adjacent to the parking lot, and there is no evidence there was another dumpster available to tenants. Therefore, Red Oak had a duty to ensure the parking lot was fit for reasonable access to the dumpster as well. See *id*.

The testimony of plaintiff, and the photo exhibit showing the trench in the darkness, indicate plaintiff attempted to walk north of the trench to access the dumpster, but tripped over the corner of the trench. As the trial court noted, plaintiff clearly knew of the trench's location, as she had successfully avoided it when taking her trash out every day for the fourteen days the trench was there. Plaintiff was not forced to encounter the trench to access the dumpster. The *Allison* Court found that a lessor did not breach its duty to provide tenants reasonable access to their vehicles when it ensured entrances to and exits from the parking lot were clear. Similarly, Red Oak provided two entrances to and exits from the dumpster area that avoided the trench. Further, because plaintiff was also able to walk around the trench successfully many times, the trench was a mere inconvenience, which "will not defeat the characterization of a lot as being fit for its intended purposes." See *Allison*, 481 Mich at 430. The trial court did not err in concluding that the parking lot was fit for its intended use; it provided plaintiff with reasonable access to the dumpster, and thus Red Oak did not violate MCL 554.139(1)(a).

## C. NEGLIGENCE

Plaintiff argues the trial court erred in finding the trench was open and obvious, and that Westveld was entitled to summary disposition on that basis. Plaintiff contends that the trench was not open and obvious, Westveld was merely a contractor and could not avail itself of the open and obvious defense, and most importantly, the trial court analyzed plaintiff's claim under the duty element of negligence rather than the breach element, which is contrary to the Supreme Court's recent decision in *Kandil-Elsayed*.

In *Kandil-Elsayed*, the Supreme Court explicitly overruled *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001), the case that established the open and obvious defense as an element of duty in premises liability cases. *Kandil-Elsayed*, 512 Mich at 153. Now, courts are to analyze the open and obvious nature of a defect under the breach of duty and comparative fault element of negligence. *Id*. In premises liability actions and common law negligence actions, the plaintiff must "prove four essential elements: duty, breach, causation, and harm." *Id*. at 110. In Michigan, it is well settled that "the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides." *Id*. at 112 (citation omitted). And in contrast, the question of breach is usually a jury question. *Id*. However, when the evidence of breach presents no genuine issue of material fact, breach can be decided by the court as a matter of law. *Id*. at 112 n 2. There can be no tort liability unless a defendant owed a duty to the plaintiff. *Hill v Sears, Roebuck and Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). And there can be no duty imposed if there is no relationship between the parties because the harm is not foreseeable. *Id*. at 661.

In *Lugo*, our Supreme Court held that a plaintiff who stepped in a pothole and fell while walking across defendant's parking lot could not recover in negligence because the pothole was open and obvious, and thus defendant had no duty to protect the plaintiff. *Lugo*, 464 Mich at 523. Plaintiffs could only recover for an open and obvious danger if there were special aspects of the condition that would make an open and obvious risk unreasonably dangerous. *Id*. at 517. As stated, in *Kandil-Elsayed*, the Supreme Court overruled *Lugo* and held that the open and obvious danger doctrine is now to be analyzed when asking whether a defendant breached its duty to the plaintiff. 512 Mich at 153. The test for whether a danger is open and obvious remains "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. at 134 (citation omitted). "This is an objective standard, calling for an examination of 'the objective nature of the condition of the premises at issue.'" *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012), quoting *Lugo*, 464 Mich at 523-524.

Plaintiff asserts only a claim of negligence against defendant Westveld, and not a claim of premises liability. However, plaintiff's claim is based on an injury arising from a condition of the land, i.e., the trench in the parking lot. "A claim based on the condition of the premises is a premises liability claim." *Finazzo v Fire Equipment Co*, 323 Mich App 620, 627; 918 NW2d 200 (2018) (citation omitted). The trial court used this reasoning to conclude that plaintiff's claim was based in premises liability, and thus the open and obvious nature of the trench precluded liability. Therefore, we will analyze plaintiff's arguments in the context of both premises liability and general negligence.

## 1. PREMISES LIABILITY

It is well established that "premises liability is conditioned upon the presence of both possession and control over the land." *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 660; 575 NW2d 745 (1998). "This rule is based on the principle that a party "in possession is in a position of control, and normally best able to prevent any harm to others." *Finazzo*, 323 Mich App at 627. "Liability for negligence does not depend upon title; a person is liable for an injury resulting from his negligence in respect of a place or instrumentality which is in his control or possession, even though he is not the owner thereof." *Id*. (citation and emphasis omitted).

In this case, defendant Westveld was not in possession or control of the land at the time of plaintiff's fall. Defendant Red Oak possessed the apartment complex and contracted with Westveld to perform concrete work around the common areas. Westveld's owner testified that he started the job on or about October 14, 2021 and finished on or about October 21, 2021. This is consistent with plaintiff's notes that indicate the sidewalks were being torn out on October 14, 2021, and that they were being repaired on October 18, 2021. Plaintiff's fall occurred on October 30, 2021, nine days after defendant Westveld had vacated the premises. It is clear that Westveld had neither possession or control of the premises at the time of plaintiff's fall. The trial court erred in concluding Westveld created the condition on the land "such that it would be subject to the same liability" as though it were the possessor of land. However, this Court can affirm a decision on a motion for summary disposition for different reasons than those identified by the trial court. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015).

## 2. ORDINARY NEGLIGENCE

Plaintiff asserts a claim in ordinary negligence against defendant Westveld. "Contractors have a common-law duty to perform their work with ordinary care so as not to unreasonably endanger employees of other subcontractors or anyone else lawfully on the worksite." *Finazzo*, 323 Mich App at 634 (citation omitted). Generally, whether a particular defendant's conduct created an unreasonable risk of harm is a question of fact for the jury to decide. *Id*. But if the court finds that no reasonable person could conclude that the defendant created an unreasonable risk of harm, then the court can decide the question of duty as a matter of law. *Id*.

In *Finazzo*, plaintiff was working as a security guard at a company called ITC. 323 Mich App at 623. ITC contracted with Fire Equipment Company (FEC) to install a fire alarm system. *Id*. While FEC was installing the system, plaintiff tripped over a cable and injured himself. *Id*. Plaintiff then sued FEC for negligence. *Id*. The court concluded that because plaintiff was aware of the presence of the cables, and had safely stepped over them numerous times before falling, plaintiff could not establish a breach. *Id*. at 637. The court found that defendant contractor did not breach its general duty to perform its work so as to not unreasonably endanger the well-being of anyone lawfully on the worksite. *Id*.

Here, Westveld had a common law duty to perform its work with ordinary care so as not to create an unreasonable risk of harm. But for many of the same reasons that the trial court found the trench to be open and obvious, defendant Westveld did not breach its general duty of ordinary care. First and foremost, plaintiff was aware of the hazard; she and others had safely accessed the dumpster for two weeks before plaintiff's fall. Plaintiff took detailed notes on the contractors' activities around the complex in the days leading up to her fall and was aware of the trench's existence and location. The concrete slab was visible even in the darkness, as is shown from the photograph plaintiff provided.

The trial court did not err in finding that the trench was avoidable and did not unreasonably endanger plaintiff. Plaintiff, despite her awareness of the trench, chose a path that led her into it on the morning of her accident, even though she had managed to avoid it on multiple previous occasions. Therefore, Westveld did not breach its general duty to perform its work so as to not *unreasonably* endanger the well-being of anyone on the premises. See *Finazzo*, 323 Mich App at 637. Because the evidence concerning Westveld's alleged breach presents no question of fact, the trial court did not err in granting Westveld's motion for summary disposition pursuant to MCR 2.116(C)(10). And because there is no genuine issue of material fact that Westveld breached a duty owed to plaintiff, her claim against Westveld fails whether examined as either a premises liability case or a negligence case.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly