GILLAM *v.* MICHIGAN MORTGAGE-INVESTMENT
CORPORATION.

1. CONTRACTS—MORTGAGES—SURRENDER OF EQUITY OF REDEMPTION —CONSIDERATION.

In a suit for the reassignment of a certain lease and option to purchase and for an accounting, the court below was in error in finding that an agreement in writing whereby an assignment of said lease and option to purchase, given as security, became absolute, was without consideration, where it appears that by said agreement plaintiff, who was in default, was relieved of all liability, and in the event of a sale of the lease and option on or before a certain date, defendant was to be reimbursed for all moneys advanced, plaintiff was to be paid a certain amount, and the remainder of the proceeds was to be divided equally between them.

2. SAME—EQUITY—UNCONSCIONABLE CONTRACT.

In the absence of a showing that defendant took advantage of plaintiff's situation to drive him into an unfair bargain, or that there was fraud or duress, and in view of the fact that plaintiff, .a man of large business

experience, thoroughly understood the contract and willingly entered into it, it cannot be said that the contract was unconscionable.

3. SAME—EQUITY WILL CLOSELY SCRUTINIZE SURRENDER OF EQUITY OF REDEMPTION.

A contract whereby a mortgagor's equity of redemption is surrendered will be scrutinized closely by a court of equity to determine that it was freely and fairly made, but where it appears that no undue advantage was taken of the mortgagor's necessities, and that there was a good and valuable consideration, the contract will not be set aside.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted June 5, 1923. (Docket No. 19.) Decided October 1, 1923.

Bill by Robert H. Gillam against the Michigan Mortgage-Investment Corporation for a reassignment of. certain securities, and for an accounting. From a decree for plaintiff, defendant appeals. Reversed, and decree entered for defendant.

*E. S. Avery* and *D. G. F. Warner*, for plaintiff.

*Charles W. McGill* and *Dean W. Kelley*, for defendant.

MCDONALD, J. The purpose of plaintiff's bill is to secure a reassignment of certain securities and for an accounting. On the 27th of July, 1921, he obtained a 99-year lease and an option to purchase certain property in the city of Lansing, known as the Oakland building. The purchase price named in the option was $390,000. The lease required quarterly payments of $5,000 each, in advance, for the first 5 years, $24,000 for the next 5 years, with increases at regular intervals thereafter. The plaintiff gave his note payable in 30 days for the first quarterly payment. To secure money for the payment of this note and other personal obligations, he borrowed $15,000 from the defendant on the 3d of August, 1921, giving his note for $16,500,

the amount above the $15,000 being what defendant terms a "financing charge." The note called for interest at 7 per cent., and was payable in three years by monthly payments of $500 each. To secure its payment plaintiff gave an assignment of the lease and option, and of certain life insurance policies and rentals. The building apparently did not produce sufficient income from rentals to enable plaintiff to care for his payments, and it became necessary for him to secure a further loan from the defendant. On the 2d of March, 1922, he borrowed $9,000 and gave his note for $9,270, which included a "financing charge" of $270. The note was payable in 3 months and was secured by an assignment of the 99-year lease, the option to purchase, and certain life insurance policies and rentals. On June 17th this note was due and unpaid, and plaintiff was in default in his monthly payments on the first note. The defendant served notice that it had exercised its option and had declared due and payable the whole amount of the unpaid principal, and interest on the note of August 3, 1921. On the 20th of June, 1922, the plaintiff gave to the Standard Real Estate Company of Lansing a 30-day option for the purchase for $100,000 of the 99-year lease and the original option. This option was never exercised by the Standard Real Estate Company. On the 27th of June, 1922, the parties hereto made an agreement in writing in which the absolute title to the lease and option was declared to be in the defendant; that in the event of a sale to the Standard Real Estate Company, or to any other party, on or before the 20th of August, 1922, the defendant was to be fully reimbursed out of the proceeds, for all moneys loaned and for any advancements which it might have made up to the time of the sale; that the plaintiff was to be paid $8,000 and the remainder of the proceeds divided equally between them. It is the plaintiff's claim that

this contract was unconscionable, made under duress, was without consideration, and that he did not thereby release his equity of redemption. This the defendant denies and insists that, by virtue of this agreement, it became vested with the sole ownership of the 99-year lease and option to purchase.

The circuit judge found that the contract was without consideration and that the title to the lease and option did not thereby become vested in the defendant. He determined the amount due and payable to the defendant to be $30,769.79, and directed its payment by the plaintiff, and required the defendant to transfer and assign to him the lease and option and other securities. From the decree entered the defendant has appealed.

We think the circuit judge was in error in his finding that the contract of June 27th was without consideration. At that time the plaintiff's indebtedness to the defendant aggregated the sum of about $25,793.99, all of which was due. He owed current bills amounting to $2,793.34, which he was unable to pay. He had given his check for $4,000 in payment on the June installment of the lease, which check the bank had dishonored because of "no funds." Other payments were about to become due and he had no money to meet them. By this contract with the defendant he was relieved of these various obligations and of every other obligation connected with the lease and option. In addition thereto, in the event of a sale on or before August 20th, he was to receive $8,000 and one-half of the balance of the proceeds after the defendant had been reimbursed for the amount it had advanced. In view of these benefits which he received, it cannot be said that there was no consideration for the surrender of his interest in the option and lease, which at that time was but an equity of redemption.

It is further urged by the plaintiff that if there

was any consideration it was so grossly inadequate as to render the contract unconscionable.

"An unconscionable contract is said to be one 'such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other.' To what extent inadequacy of consideration must go to make a contract unconscionable is difficult to state, except in abstract terms, which give but little practical help. It has been said that there must be 'an inequality so strong, gross, and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it.' Another form of stating the rule is that 'where the inadequacy of price is so great that the mind revolts at it, the court will lay hold on the slightest circumstances of oppression or advantage to rescind the contract.' It is also said that a contract will be regarded as unconscionable if the inadequacy is so gross as to shock the conscience. The fact that the contract is a foolish one for one of the parties, and a very advantageous one for the other, does not of itself establish the fact that it was unconscionable." * * * Page on Contracts (2d Ed.), § 641.

Our examination of the record does not convince us that this contract was unconscionable. The plaintiff was trying to handle a large business proposition without any financial means. Admittedly and naturally, he had reached a point where he could no longer carry it. He had at this time only an equity of redemption which was of no value to him unless he could effect a sale before it expired. There was small probability that he would be able to do this unless he could secure a cancellation of pressing debts, which at that time were upwards of $25,000, and could induce some one to carry the lease and option while he was negotiating the sale. It was the part of wisdom for him to make such an arrangement with the defendant. It was his only chance. He took it willingly and without persuasion. He was a man of intelligence, of extensive

business experience, and thoroughly understood the legal effect of the transaction. Of course, it was born of his necessities, but we have discovered no evidence which would justify a finding that the defendant took advantage of his situation to drive him into an unfair bargain. In fact, under the circumstances, as shown by the record, we cannot say that the contract was not reasonably fair for the plaintiff; at least it was not unconscionable; it was fairly made without fraud or duress; it is supported by a reasonably adequate consideration and is legally sufficient to release the plaintiff's equity of redemption.

"The mortgagor may release the equity of redemption to the mortgagee for a good and valuable consideration, when done voluntarily, and there is no fraud, and no undue influence brought to bear upon him for that purpose by the creditor." *Batty* v. *Snook*, 5 Mich. 231.

"A mortgagor may release his equity of redemption to the mortgagee by a separate and distinct contract entered into in good faith and for a good consideration." 19 R. C. L. p. 159.

In view of the fact that the legal effect of this contract was a surrender of a mortgagor's equity of redemption and because of the plaintiff's circumstances at the time it was executed, we have regarded the transaction as one which a court of equity should scrutinize closely in order to be satisfied that it was freely and fairly made; that no undue advantage was taken of his necessities; and that it was for a good and valuable consideration. We are convinced that the contract should not be avoided for any of these reasons.

The decree of the circuit court is reversed, and one may be entered in harmony with this opinion. The defendant will have costs.

Wiest, C. J., and Fellows, Clark, Bird, Sharpe, Moore, and Steere, JJ., concurred.