*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHAUNTE JOHNSON,

        Plaintiff-Appellant,

v

BEST BUY COMPANY, INC.,

        Defendant-Appellee.

FOR PUBLICATION
December 05, 2025
8:38 AM

No. 363807
Wayne Circuit Court
LC No. 22-005281-CD

## ON REMAND

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

MURRAY, J.

## I. INTRODUCTION

In our prior opinion we affirmed the trial court's order granting defendant's motion to compel arbitration, rejecting plaintiff's challenge to the arbitration agreement, which was premised on the arguments that the agreement (1) lacked a valid offer and acceptance; (2) was not explained to her by defendant; (3) lacked valid consideration, and (4) violated public policy. *Johnson v Best Buy Company, Inc*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2024 (Docket No. 363807), pp 2-4.

Plaintiff sought leave to appeal, which the Supreme Court held in abeyance pending its decision in *Rayford v American House Roseville I, LLC* (Docket No. 163989). *Johnson v Best Buy Company, Inc*, 514 Mich ___; 10 NW3d 274 (2024). *Rayford* was released on July 31, 2025, see *Rayford v American House Roseville I, LLC*, ___ Mich ___; ___ NW3d ___ (2025), and thereafter the Court vacated our prior opinion and remanded the matter for reconsideration in light of *Rayford*. *Johnson v Best Buy Company, Inc*, ___ Mich ___; 26 NW3d 400 (2025). We now turn to that task.

## II. *RAYFORD*

*Rayford* involved a challenge to a provision in a boilerplate employment agreement that shortened the statute of limitation for employment discrimination claims from three years, see

-1-

MCL 600.5805(2), to 180 days.  See *Rayford*, ___ Mich at ___; slip op at 1-2.  In addressing this legal challenge, the Court considered two issues.  First, was the boilerplate employment agreement an adhesion contract, and second, was the limitation provision also invalid as unconscionable.  Answering "yes" to the first question and "maybe" to the second, the Court held "that an adhesive boilerplate employment agreement that shortens a limitations period must be examined for reasonableness.  Additionally, these agreements are subject to traditional contract defenses, including unconscionability, and, as adhesion contracts, may be procedurally and substantively unconscionable."  *Id*. at ___; slip op at 2.

In reaching these conclusions, the *Rayford* Court overruled both *Clark v DaimlerChrysler Corp*, 268 Mich App 138; 706 NW2d 471 (2005), which had extended *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005), to employment agreements, and *Timko v Oakwood Custom Coating, Inc*, 244 Mich App 234; 625 NW2d 101 (2001), which held that a contractually shortened limitations period of 180 days in an employment agreement was not inherently unreasonable, a conclusion reached without conducting a particularized reasonableness analysis under *Herweyer v Clark Hwy Servs, Inc*, 455 Mich 14; 564 NW2d 857 (1997).  *Rayford*, ___ Mich at ___; slip op at 2.  The Court also held that the principles and tests outlined in *Camelot Excavating Co, Inc v St Paul Fire & Marine Ins Co*, 410 Mich 118; 301 NW2d 275 (1981), and *Herweyer* provide "the correct framework for reviewing contractually shortened limitations periods contained in boilerplate employment agreements."  *Rayford*, ___ Mich at ___; slip op at 2.

## III. ANALYSIS

Citing to *Rent-A-Center, W, Inc v Jackson*, 561 US 63; 130 S Ct 2772; 177 L Ed 2d 403 (2010), plaintiff argues that she is challenging "the enforceability of the delegation cause [sic] as required by Supreme Court precedent."  We take that to mean that she is attacking the arbitration clause alone, as opposed to challenging the entire agreement.[1]  We turn to the Federal Arbitration Act (FAA), 9 USC §§ 1–16, for our answer, as the arbitration provision indicates that its interpretation and validity should be determined under that law, as defendant explicitly recognizes, and plaintiff implicitly does.  Under the FAA, whether a specific arbitration provision, as opposed to the entire contract itself, is invalid, is a question for the court to decide.  "As the Supreme Court has explained, an arbitration agreement is severable from the remainder of the contract, and 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.' "  *Meadows v Cebridge Acquisition, LLC*, 132 F4th 716, 728 (CA 4, 2025), quoting *Buckeye Check Cashing, Inc v Cardegna*, 546 US 440, 445-446; 126 S Ct 1204; 163 L Ed 2d 1038 (2006).  As the Ninth Circuit Court of Appeals held:

---

[1] Nowhere in plaintiff's brief on appeal to this Court did she argue that the contract she signed-or more specifically, the arbitration clause she challenges on appeal-was an adhesion contract, or that is was unconscionable.  Her briefs filed with this Court contain no law regarding either contract theory.  Although the word "unconscionable" is found in the introduction to her brief on appeal, and the word "adhesion" is contained once in her reply brief, there is no legal argument on either point of law.  These issues were simply never raised or briefed to this Court.  Despite this, the Supreme Court instructed us to consider the appeal anew in light of *Rayford*.

We review this case en banc to clarify, as the Supreme Court has recently reiterated, that when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator. See *Buckeye Check Cashing, Inc v Cardegna*, 546 US 440; 126 S Ct 1204, 1209; 163 L Ed 2d 1038 (2006); *Prima Paint Corp v Flood & Conklin Mfg Co,* 388 US 395, 403-04; 87 S Ct 1801; 18 L Ed 2d 1270 (1967). When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 USC § 2 of the FAA. [*Nagrampa v MailCoups, Inc*, 469 F3d 1257, 1263-1264 (CA 9, 2006).]

See also *Puleo v Chase Bank USA, NA*, 605 F3d 172, 182 (CA 3, 2010) ("Under the FAA and the terms of the Arbitration Agreement, then, the District Court could not have compelled class arbitration without first addressing whether the class action waiver was unconscionable."); *Vis v American Family Life Assur Co of Columbus*, 778 F Supp 2d 971, 980 (ND Iowa, 2011) (applying Iowa law to determine if an arbitration provision was an adhesion contract); and *Arrow Overall Supply Co v Peloquin Enterprises*, 414 Mich 95, 99; 323 NW2d 1 (1982) (Under Michigan law, "[t]he existence of a contract to arbitrate and the enforceability of its terms is a judicial question which cannot be decided by an arbitrator.").

## A. ADHESION CONTRACT

Largely out of concern for the unequal bargaining positions between an employer and employee, and a disdain for "take it or leave it" exchanges, *Rayford*, ___ Mich at ___; slip op at 18-19, the *Rayford* Court held that an adhesion employment contract that contains a shortened limitation period is subject to a reasonableness review. *Id*. at ___; slip op at 28 ("We now reestablish that reasonableness review is used for contractually shortened limitations periods in adhesive employment contracts."). The preciseness of the *Rayford* holding could not be clearer, as the Court repeatedly pointed out that it was addressing adhesion employment contracts that contain a limitation on the statutory time to bring a complaint. The Court repeated this holding throughout its opinion, see *id*. at ___; slip op at 2 ("We hold that an adhesive boilerplate employment agreement that shortens a limitations period must be examined for reasonableness"), and *id*. at ___; slip op at 28 ("Adhesion contracts with provisions shortening the statute of limitations in the employment context are subject to heightened judicial scrutiny to determine whether the provisions are reasonable"), while then declaring that in "light of our holdings in this case, courts must now first determine whether a challenged employment agreement is adhesive and, if so, apply *Camelot* to determine whether a shortened limitations period is reasonable." *Id*. at ___; slip op at 30. Plaintiff's challenge is not to a shortened limitations period, but to an arbitration agreement that was part of a larger employment application. Thus, *Rayford*'s specific holding is inapplicable, but the standards it applied are not.

We will assume that the contract between plaintiff and defendant was an adhesion contract, as the agreement was prepared by defendant, was between parties with disparate bargaining power as recognized in *Rayford*, was a boilerplate agreement presented in an online format, and involved plaintiff clicking through an online application (and later employment agreement), during which she would affix her signature to the document by "clicking" certain boxes to evidence her

agreement. See *Johnson*, unpub op at 2-3, and *Morris v Metriyakool*, 418 Mich 423, 471-472; 344 NW2d 736 (1984) (opinion by RYAN, J.) ("A contract of adhesion is a contract which has some or all of the following characteristics: the parties to the contract were of unequal bargaining strength; the contract is expressed in standardized language prepared by the stronger party to meet his needs; and the contract is offered by the stronger party to the weaker party on a 'take it or leave it' basis. Therefore, the essence of a contract of adhesion is a nonconsensual agreement forced upon a party against his will.") (citation omitted).

But as several courts have noted, in these modern, high-tech times, employers and businesses alike frequently use form contracts—with no negotiation and often completed online by the prospective employee or customer—to engage in every-day commerce across the nation and globe. See, e.g., *State ex rel Dunlap v Berger*, 211 W Va 549, 557; 567 SE2d 265 (2002) (Under West Virginia law, adhesion contracts are form contracts " 'submitted by one party on the basis of this or nothing[.]' " However, " '[s]ince the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable.' "), quoting *American Food Mgt, Inc v Henson*, 105 Ill App 3d 141, 145; 434 NE2d 59 (1982); and *Adkins v Labor Ready, Inc*, 303 F3d 496, 500-501 (CA 4, 2002) (remarking that a ruling of unconscionability based solely on the gross bargaining disparities between the parties "could potentially apply to every contract of employment in our contemporary economy"). Thus, as in other states, in Michigan an agreement is not an unlawful adhesion contract if a court determines that the terms a party essentially had no option to dispute are otherwise reasonable. See *Auto Club Group Ins Co v Daniel*, 254 Mich App 1, 5; 658 NW2d 193 (2002) ("Generally, this Court will not invalidate contracts as adhesion contracts where the challenged provision is reasonable."); *Rehmann, Robson & Co v McMahan*, 187 Mich App 36, 43-44; 466 NW2d 325 (1991); *Ryoti v Paine, Webber, Jackson & Curtis, Inc*, 142 Mich App 805, 809; 371 NW2d 454 (1985); and *Barck v Grant State Bank*, 137 Mich App 440, 445; 357 NW2d 872 (1984) ("Even if the contract is adhesive under the first prong, still the challenged term is enforceable if it is substantively reasonable and not oppressive or unconscionable."). The question of the validity of the arbitration agreement thus turns on whether the agreement is reasonable. We hold that the arbitration provision is reasonable.[2]

First and foremost, our Legislature and Supreme Court have long approved arbitration as a legitimate, efficient alternative to resolving matters in court. The Legislature has passed several statutes providing for arbitration as a way to resolve disputes, including the broad Uniform Arbitration Act, MCL 691.1681 *et seq.*, and the Domestic Relations Arbitration Act, MCL 600.5070 *et seq.* For its part, the Supreme Court has repeatedly indicated that the use of arbitration to resolve civil matters outside the courtroom is favored in this state. See *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021); *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016) (" 'The general policy of this State is favorable to arbitration.' "), quoting *Detroit v A W Kutsche & Co*, 309 Mich 700, 703; 16 NW2d 128 (1944); and *Port Huron Area Sch Dist v Port Huron Ed Ass'n*, 426 Mich 143, 150; 393 NW2d 811 (1986) ("It is well-settled that arbitration is

---

[2] There is no factual dispute about the terms of the agreement or the circumstances surrounding plaintiff's signing of the agreement.

a favored means of resolving labor disputes . . . ."). The Court has likewise promulgated court rules containing rules and procedures for cases invoking arbitration. See MCR 3.602.

In light of this general public policy favoring arbitration, a conflict panel of this Court held that an agreement to arbitrate a civil rights claim was reasonable as a matter of law, because it did not deprive plaintiff of her statutory rights and remedies and was procedurally fair. *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 157 n 28; 596 NW2d 208 (1999).[3] So too here, as the arbitration provision—like that involved in *Rembert*—does not limit plaintiff's substantive rights or remedies available under the Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq*. The provision requires both the employer and employee to bring all nonexempt claims in arbitration, and the rules of the American Arbitration Association govern all proceedings. See *Lagatree v Luce, Forward, Hamilton & Scripps LLP*, 74 Cal App 4th 1105, 1126-1127; 88 Cal Rptr 2d 664 (1999) ("The rules of the American Arbitration Association specified by the clause as governing the resolution of disputes are generally regarded to be neutral and fair.") (quotation marks and citation omitted). The agreement was very clear that both parties were foregoing the right to a jury trial, and the agreement allows both sides to employ attorneys, though at their own expense (excluding any postjudgment award of attorney fees). Overall, there is nothing within the policy that strikes us as unusual, as it contains many provisions typically found in arbitration agreements. In light of the terms of the agreement, and the common law and statutory law of this state containing a general approval of arbitration as an alternative means to decide matters, we hold that the arbitration provision is reasonable, and is therefore not an unlawful adhesion contract.

As noted, *Rayford* involved a policy containing a shortened limitation period, and its ultimate holding is limited to policies that shorten the statutory time in which to bring civil rights claims. But the Court's concern for the reasonableness of such provisions sheds light on why this arbitration provision is indeed reasonable, as the *Rayford* Court repeatedly emphasized the policy concerns of allowing an employer to shorten a statutory limitations period, and the effect it could have on the employee:

> The difference between an employee having three years to file a lawsuit, as opposed to just six months, cannot be understated. Prospective plaintiffs and defendants both depend on the reliability and consistency of a statute of limitations when planning for and moving forward with a case. Plaintiffs depend on the time provided in statutes of limitations to gather evidence, hire an attorney, and, in some cases, even realize they have been injured. Meanwhile, defendants trust that after the time period set forth in a statute of limitations has run, they will no longer have a potential case looming over them.

> When limitations periods are created and changed on a case-by-case basis through an employment application or, as in this case, an employee handbook acknowledgment, the employee's ability to protect their legislatively and constitutionally protected right to be free from discrimination may be significantly

---

[3] The United States Supreme Court has also endorsed the use of arbitration as a means to resolve employment matters. *Circuit City Stores, Inc v Adams*, 532 US 105, 122-123; 121 S Ct 1302; 149 L Ed 2d 234 (2001).

curtailed. The claims period is not only abbreviated, but the purpose of these statutes—to hold employers accountable—may be curtailed as well, depending on how short the contractual limitations period is. Given the severe effects on both plaintiffs and defendants, courts must be cautious when examining employment contracts that shorten these periods. [*Rayford*, ___ Mich at ___; slip op at 29.]

Here, unlike the negative consequences affecting plaintiffs resulting from shortened limitation periods pointed out in *Rayford*, the challenged arbitration provision applies to both parties, adopts AAA rules, and applies to certain claims brought by either party. And, other than changing the forum from a courtroom to an arbitration room, and the inability to have a jury trial, the provision changes nothing substantively that the employee or employer would be entitled to under the law. See *Morris*, 418 Mich at 441 ("We do not believe that an ordinary person signing this agreement to arbitrate would reasonably expect a jury trial. We also reject plaintiffs' argument that the agreement is unconscionable for failure to highlight these terms."). It is, as we have said, reasonable.

## B. UNCONSCIONABILITY

This conclusion makes resolution of the remaining issue remanded to us—whether the arbitration provision, contained in the boilerplate agreement, is unconscionable—much easier to resolve. "[I]n order for a contract to be unconscionable, it must be procedurally and substantively unconscionable." *Rayford*, ___ Mich at ___; slip op at 31. Procedural unconscionability exists when a weaker party has no "realistic alternative" but to accept the term, while substantive unconscionability requires courts to analyze the reasonableness of the challenged term. See *Allen v Mich Bell Tel Co*, 18 Mich App 632, 637-638; 171 NW2d 689 (1969). A contract provision is substantively unreasonable if the inequity "shock[s] the conscience" of the court. *Gillam v Mich Mtg-Investment Corp*, 224 Mich 405, 409; 194 NW 981 (1923) (quotation marks and citation omitted).[4]

For the reasons outlined above, the arbitration provision is reasonable, and in no way "shocks the conscience" of the Court. In fact, it is just the opposite, as the terms of the provision are reasonable, they apply equally to both parties, and do not inhibit the rights and remedies available to either side of the arbitration. See *Rembert*, 235 Mich App at 157; *Lebenbom v UBS Fin Servs, Inc*, 326 Mich App 200, 208, 218; 926 NW2d 865 (2018). As a result, the arbitration provision is not unconscionable.

---

[4] No one has raised whether it is for the court, or the arbitrator, to determine whether the arbitration agreement is unconscionable. The federal courts hold that when an "unconscionability challenge goes to the contract as a whole, the issue of unconscionability is for the arbitrator—not a court—to decide." See *Lopez v Cintas Corp*, 47 F4th 428, 433 (CA 5, 2022), citing *Rent-A-Center, W, Inc*, 561 US at 70 n 2, 71, 76. See also *In re StockX Customer Data Security Breach Litigation*, 19 F4th 873, 886 (CA 6, 2021). Because plaintiff's challenge is specifically to the "delegation clause," we conclude this is a challenge to the arbitration provision alone, and not a challenge to the contract as a whole.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly